State v. Walton.

THE STATE v. JOHN C. WALTON, Appellant.

Division Two, February 17, 1914.

1. **ALIBI: Inconclusive Evidence.** The evidence brought forward to prove an *alibi* for defendant, which portrays him as a man fifty years of age, without family or home, a cigarmaker of roving disposition, who occasionally dropped into Chicago to spend a few days or weeks with his brothers and sisters, and who never did any permanent work for anyone at any place, is held not to be convincing in this robbery case wherein the identity of the robber is an issue; and hence the jury were not without justification in disbelieving it.

2. **INFORMATION: Amendment During Trial: Change in Nature of Charge.** Sec. 4970, R. S. 1909, declaring that an information "may be amended at any time before the case is finally submitted to the justice or jury" authorizes only such amendments as do not change the nature of the charge or the defense which may be interposed. If the degree or nature of the alleged crime be changed by the amendment it should not be permitted after the trial has begun.

3. **――: ――: ――: Adding "in the Presence of": Defense of Alibi.** Where the only change made in the information charging robbery by an amendment made after the trial had

begun was the adding of the words "in the presence of," and, the only defense interposed was an *alibi*, which in nowise was rendered more difficult by the amendment, and the amendment did not necessitate the calling of other witnesses, the rights of defendant were not prejudiced by the amendment—the robbery not being disputed.

4. JURORS: Reading Newspaper Comment. Where the jurors had read newspaper articles stating that there was widespread interest in the trial, that it would likely consume an entire week, that the defendant had filed depositions by which he would attempt to prove he was in Chicago on the day of the robbery and that the defense of *alibi* had proven very useful to a certain noted criminal, but before defendant made his peremptory challenges the jurors were re-examined by defendant's attorney and the court, and each of them testified that he had not become prejudiced against defendant or the defense of *alibi* by reading the articles, the court did not err in refusing to discharge the jury.

5. WITNESSES: Names not Indorsed on Information: Purpose. The indorsement of the names of witnesses for the State on the information often proves useful to the defendant, because it gives him an opportunity to interview those witnesses and find out what their testimony will be before going to trial. But the statute was not enacted solely to aid an accused; it was designed, in part at least, to regulate the taxation of costs and the granting of continuances to the State. After the prosecuting attorney had made a satisfactory showing that he did not know until a very short time before the trial that he would call the four witnesses whose names were not indorsed on the information and who defendant did not know were going to be used, and that he did not purposely withhold their names from defendant's attorney, the court did not err in permitting them to testify.

6. PREJUDICIAL REMARKS OF COURT: Proof of Specific Crime by Witness. After the defendant had attempted to impeach or discredit a State's witness by proof of specific crimes alleged to have been committed by her and of which she had not been convicted, the court excluded evidence of other specific crimes, remarking within the hearing of the jury: "We cannot try every witness in this case; if we did, we would go into ramifications that would last the rest of our lives." *Held*, that the court was not without justification in placing some emphasis upon his ruling, and as his remark did not amount to an intimation to the jury of what his opinion was regarding the guilt or innocence of defendant, it was not prejudicial.

7. **EVIDENCE: Prior Attempt to Arrest Defendant for Other Crimes: No Proper Objection.** If the objection to certain evidence does not point out the particular ground which rendered it inadmissible, its admission was not reversible error. The admission of testimony that eight days before the robbery in Kansas City the police department of Chicago issued an order for the arrest of defendant, and that some of the policemen were looking for him from that date to and including the day of the robbery, even if it be conceded to have been improper, because tending to prove defendant had a bad reputation, when he had not testified or otherwise placed his reputation in issue, was not reversible error, because it really had little or no bearing on the case and the only objection to it was that it was "leading and suggestive."

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw,* Judge.

AFFIRMED.

*Jesse E. James* for appellant.

*John T. Barker,* Attorney-General, and *Paul P. Prosser,* for the State.

(1) The amendment of the information by inserting after the words "from the person and against the will of the said B. J. Franklin" the words: "and in the presence of the said B. J. Franklin," was not such as to cause any surprise to the defendant or to jeopardize his defense. The statute, which permits the amendment of the information at any time before the case is finally submitted to the jury, is a complete answer to defendant's contention that the action of the court in this respect was error. Sec. 4970, R. S. 1909. (2) Not only was no specific ground of disqualification stated by the defendant against any one or all of the jurors whom he challenged, but the record wholly fails to show that any of such jurors were unfairly influenced in any manner whatever by such newspaper articles. Their competency was fully tested, and each and every one of them stated that he had not been

prejudiced by such newspaper articles either against the defendant or his counsel. The determination of the qualification of these jurors rested in the discretion of the trial court, and his finding with respect to their competency will not be disturbed unless manifest error appears. State v. Williamson, 106 Mo. 169; State v. Bauerle, 145 Mo. 15; State v. Jackson, 167 Mo. 296. (3) The defendant specifically complains of the action of the Court ''in allowing the State to introduce evidence to show that a general order was issued by the police department of Chicago, Illinois, on July 12, 1911, to arrest the defendant herein.'' While it may be said that such testimony indicated that the defendant had been wanted for some alleged offense other than that for which he was on trial, yet it is manifest that such was not the purpose of the testimony. It was admitted upon the theory that it related to an important collateral fact, directly connected with other facts developed at the trial that tended to show the defendant's presence at the time and place of the commission of the offense with which he was charged. It was clearly competent, not only as tending to establish the disputed identity of the defendant, but for the further purpose of rebutting the issue of *alibi* which he had tendered. State v. Walker, 194 Mo. 262; State v. Crane, 202 Mo. 85; State v. Sassaman, 214 Mo. 731. (4) The ground of defendant's objection to certain witnesses testifying was that their names had not been endorsed on the information. It fully appears from the record that the names of such witnesses had not been purposely withheld from the defendant, and that knowledge of them had only reached the prosecuting attorney shortly before they were introduced at the trial. An examination of the record will readily convince this court that defendant's contention is without merit, and that no error was committed in permitting such witnesses to testify over the objection of the defendant. State v. Henderson, 186 Mo. 482; State

v. Barrington, 198 Mo. 68; State v. Sharp, 233 Mo. 283.

BROWN, J.—Upon a trial in the criminal court of Jackson county defendant was convicted of robbery in the first degree, and appeals from a judgment fixing his punishment at fourteen years in the penitentiary.

On the morning of July 20, 1911, a jewelry store in Kansas City, owned by one B. J. Franklin and his brother, was robbed of diamonds valued at $4100 by two unmasked men. The State contends that defendant is one of the men who robbed the store, while defendant rests his defense upon an *alibi*.

Evidence covering nine hundred pages was submitted to the jury, and, while in his motion for new trial, defendant's counsel assigns forty alleged errors of the trial court, he has not favored us with a brief.

That the Franklin store was robbed is not disputed, and to establish the alleged fact that defendant participated in the crime the State introduced evidence, the general outline of which runs as follows:

That defendant came to Kansas City in the fall of 1909 and opened a small cigar factory, which he operated less than three months; then selling his tools and going away. This evidence pertains to the question of identity. That about July 14, 1911, defendant returned to Kansas City and remained in that city until the 20th day of July, at which time he and a man named William Rock committed the robbery.

More in detail, the State's evidence tends to prove that one Thomas Bolton, a bartender of Kansas City, became acquainted with defendant at Davenport, Iowa, in 1904, at which city defendant made cigars and frequented a saloon kept by said witness. On coming to Kansas City in 1909 defendant renewed his acquaintance with Bolton, and the latter introduced him to one Herman Oppenheimer, whose son was in the bonding

business. Oppenheimer's son furnished a bond to the Government for defendant as a cigar manufacturer. In filing this bond defendant gave the name of John C. Walton.

The defendant was positively identified by Bolton, the bartender, as the same man who established the cigar factory. He was also identified by Oppenheimer; by a woman from whom he rented rooms for his cigar factory; by her fifteen-year-old son who did some work for defendant stripping tobacco; by one Frank Leofler, who sold him leaf tobacco and bought defendant's tools when the latter went away; and by a jeweler who marketed one or two diamonds for defendant in the fall of 1909. He was also identified by some six other witnesses as the same man who made cigars in Kansas City in 1909, but their acquaintance with him was slight and their evidence not important.

After leaving Kansas City in 1909, defendant was not heard of again until a few days before the robbery, when he went into the jewelry store and talked with the Franklin brothers about fifteen minutes in regard to a diamond worth seven or eight hundred dollars, which he expressed a desire to purchase. A day or two later the Franklins observed defendant looking through their window at their display of diamonds. On that day he did not go into the store.

About 8:15 on the morning of July 20, 1911, while B. J. Franklin was opening the safe where the firm's diamonds were kept at night, defendant walked into the store and began talking about the proposed diamond purchase. Presently, another stranger named William Rock came in, and, after offering Franklin a piece of paper, seized him by the throat, and the two men pushed Franklin a few steps away from his safe. In this scuffle defendant fired a shot at Franklin, who fell to the floor and feigned insensibility. As soon as Franklin fell defendant took a tray, or box, containing

$4100 worth of diamonds, out of the safe, and the two strangers started to run away. Franklin arose and pursued them some thirty-five yards to the saloon where witness Bolton was working. At the saloon door defendant halted long enough to fire a second shot at Franklin. This shot also went wild and wounded one Seitz who was passing along the street. Defendant ran through the saloon and escaped.

Bolton, the bartender, testified that on coming to Kansas City in 1911 defendant again renewed his acquaintance with witness. That defendant and Rock came into the saloon several times a few days before the robbery; that they were in the saloon shortly after six o'clock the morning of July 20th, and that defendant came in again after the robbery about nine o'clock a. m. and asked what became of his partner. Bolton was corroborated in regard to this last visit by another bartender in the same saloon.

One Ella Wonser, who kept a rooming house, testified that defendant rented a room from her six days before the robbery. That about ten o'clock on the morning of the robbery defendant came into his room, changed his clothes and put on a cap, leaving a panama hat which he had been wearing, and did not again return. Mrs. Wonser's identification of defendant was most positive. Her daughter, Mrs. Hill, who was at the time helping to run the rooming house, likewise identified him. Two witnesses who were on the street identified defendant as the man who ran out of Franklin's store with a box or tray under his arm. Two witnesses testified that Mrs. Wonser's reputation was bad, but the other witnesses who testified for the State were not impeached.

All the witnesses for the State testified that defendant wore a mustache when he was in Kansas City in the years 1909 and 1911; and three other witnesses from Elgin, Illinois, testified that he had a mustache when arrested, and that his mustache was shaven off

at the time of the trial, thereby changing his appear-
ance.   No explanation was given as to why defendant
removed his mustache after his arrest.   He was not
sworn.

The chief of police addressed defendant as Wal-
ton when the latter was brought to Kansas City after
his arrest.   Defendant told the chief that his name was
not Walton, and denied having been in the cigar busi-
ness in Kansas City, and asserted that he would "rot"
before he would make any statement.

Defendant introduced some twenty witnesses, by
whom he attempted to prove that his name was Maus,
and that he lived at Chicago and was in that city on
July 20, 1911 (the day the crime was committed).
Some of defendant's witnesses knew him as John
Maus, others as Jake Maus, and still others as Speck
Maus.   When arrested at Elgin, Illinois, he gave the
name of John Williams.

Three witnesses—a wholesale cigar dealer, a sa-
loon keeper and a politician—testified that they at-
tended a baseball game with defendant in Chicago on
July 20th.   Two sisters, a brother, and several other
witnesses gave evidence tending to prove that defend-
ant was in Chicago on July 20, 1911, and for several
days prior to that date.

It was proven that, under the train service as it
existed in July, 1911, defendant could not, by leaving
Kansas City after eight o'clock in the morning, have
reached Chicago in time to attend a ball game on the
same day.

The picture which defendant's witnesses portray
of him, through their evidence, represents a man fifty
years of age, without family or home; a cigar-maker
of roving disposition, occasionally dropping into Chi-
cago to spend a few days or weeks with his brothers
and sisters.   If he ever did any permanent work any-
where, or for anybody, no witness was called who gave
satisfactory evidence of that fact.   William Rock, who

was apprehended a few moments after the crime was committed, pleaded guilty and is serving a term in the penitentiary, testified from a photograph of defendant that he is not the man who robbed the jewelry store.

After carefully reading all defendant's *alibi* evidence, we will only say that it was not very convincing, and the jury were not without justification in disbelieving it. Such other facts as are necessary to a full understanding of the case will be noted in our opinion.

Of the many alleged errors assigned by defendant we find only five which are of enough importance to justify comment in this opinion, to-wit: (1) amendment of information after the trial had begun; (2) newspaper comments on the trial read by the jury; (3) permitting witnesses to testify for the State whose names were not indorsed on the information; (4) alleged unfriendly comments by the trial court; and, (5) admission of evidence tending to show that defendant had committed other crimes.

## OPINION.

I. Below we quote the body of the information with the amendment noted in italics:

"Now comes Mord M. Bogie, Assistant Prosecuting Attorney for the State of Missouri, in and for the body of the county of Jackson, and upon his oath informs the court, that John C. Walton,

**Amendment of Information.** *alias* Jacob Moss, *alias* Speck Moss, *alias* Carl Lutz, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on the 20th day of July, 1911, at the county of Jackson, State of Missouri, with force and arms, in and upon one B. J. Franklin, unlawfully and feloniously did make an assault, and one Tiffany diamond ring, one and five-eighths plus one sixty-fourth carats, size five, of the value of one hundred and seventy-five dollars, and ninety-two diamond stones

set in studs, ear rings and rings in the aggregate value of four thousand dollars, all in the aggregate of the value of forty-one hundred and seventy-five dollars, the money and personal property of the said B. J. Franklin and one B. B. Franklin from the person and against the will of the said B. J. Franklin *and in the presence of said B. J. Franklin* then and there, by force and violence to the person of the said B. J. Franklin and by putting the said B. J. Franklin in fear of an immediate injury to his person, feloniously did rob, steal, take and carry away; against the peace and dignity of the State.''

This amendment was made after the jury had been sworn and two witnesses for the State had given their evidence. The amendment was objected to and exceptions duly saved by defendant's attorney at the time.

Section 4970, Revised Statutes 1909, provides that an information ''may be amended at any time before the case is finally submitted to the justice or a jury, and no amendment shall cause a delay of the trial, except at the instance of the defendant for good cause shown upon oath or by affidavit.''

This statute is somewhat sweeping in its phraseology, but is generally construed to authorize only such amendments as do not change the nature of the charge or the defense which might be interposed. If the degree or nature of the alleged crime be changed by the amendment it should not be permitted. [State v. Emberton, 45 Mo. App. 56; and State v. Jenkins, 92 Mo. App. 439.]

Judge Kelley in his treatise on Missouri Criminal Law and Practice (3 Ed.), section 216a, says:

''The information, unlike an indictment, may be amended in matter of form or substance at any time by leave of court before the trial, and on the trial as to all matters of form and variance, at the discretion

of the court, when the same can be done without pre-
judice to the substantial rights of the defendant, on
the merits.''

In 22 Cyc. 440, the following rule is announced:

''The test as to whether a defendant is prejudiced
by the amendment of an indictment has been said to
be whether a defense under the indictment as it origi-
nally stood would be equally available after the amend-
ment is made, and whether any evidence defendant
might have would be equally applicable to the indict-
ment in the one form as in the other.''

The amendment made in this case constituted a
variance, but not a change in the nature of the crime
charged, nor the degree of punishment which might
be inflicted upon a conviction thereunder. For the pur-
poses of this review we have the right to consider the
nature of the defense interposed in ascertaining
whether or not defendant was prejudiced by the amend-
ment. His defense was, first and all the time, an *alibi*,
which was not rendered more difficult to sustain by the
amendment. The amendment did not necessitate the
calling of other witnesses by defendant, nor did he
ask for time to subpoena other witnesses. The amend-
ment made in this case might, if permitted in some
other case where the defense is different, constitute
a fatal error, but we are unable to see how in this
case, under the facts presented by the record, it worked
any prejudice to the defendant on the merits. For
the foregoing reasons this assignment will be disal-
lowed.

II.   After the jury in this case had been selected,
and before they were finally sworn to try the cause,
two newspapers of Kansas City published articles con-
cerning this case, in which articles com-
ments were made upon the widespread
interest in the trial; the fact that it would
likely consume an entire week; and that the defend-
ant had filed depositions by which he would attempt to

**Newspaper Comments.**

prove that he was in Chicago on the day of the alleged robbery. A further comment was made to the effect that the defense of *alibi* had proven very useful to a certain noted criminal by the name of Kennedy when he was in trouble.

These newspaper articles were read by several of the jurors, but before the defendent made his peremptory challenges the jurors were re-examined by defendant's attorney and the court, and each of them testified that he had not become prejudiced against defendant or the defense of *alibi* by reason of said articles. Upon the facts disclosed we find that the trial court did not err in refusing to discharge the jury selected and summon a new panel.

III. Over the objections and exceptions of defendant the trial court permitted the State to introduce four witnesses whose names had not been indorsed on the information, and who the defendant did not know were going to be used as witnesses. The prosecuting attorney made a satisfactory showing that he did not know that he would call these witnesses until a very short time before the trial, and that he did not purposely withhold their names from defendant's attorney.

**Information: Names of Witnesses.**

The indorsement of the names of witnesses for the State on informations and indictments often proves useful to the defendant, because it gives him an opportunity to interview those witnesses and find out what their evidence will be before going to trial. However, the law (Secs. 5057 and 5097, R. S. 1909) was not enacted solely to aid the accused in finding out what the evidence on the part of the State will be. It was designed, in part, at least, to regulate the taxation of costs and the granting of continuances on the part of the State. [State v. Rasco, 239 Mo. 535.] We find that the trial court did not abuse its discretion in permitting witnesses to testify whose names had not been

indorsed on the information, and we, therefore, over-rule this insistence.

IV.    It is further contended that the trial court made improper and prejudicial remarks within the hearing of the jury when it excluded evidence which tended to prove the commission of a spe-cific crime by the State's witness, Ella Wonser. In excluding that testimony the court said: "We cannot try every witness in this case; if we did we would go into ramifications that would last the rest of our lives." Prior to this remark the defendant had made other attempts to impeach or discredit the witness Wonser by proof of specific crimes alleged to have been committed by her, and for which she had not been convicted. The trial court was not without justification in placing some empha-sis upon his ruling. His remark did not amount to an intimation to the jury as to what his opinion was re-garding the guilt or innocence of defendant, and we do not believe it harmed him in any way. This con-tention will also be overruled.

*Remarks of Court.*

V.    A further insistence of defendant is that the court erred in permitting some of the State's witnesses to testify that the police department of Chicago had, on July 12, 1911, issued an order to the po-lice force of that city to arrest defendant, and that some of the policemen of said city were look-ing for defendant from July 12th up to and including the day the jewelry store was robbed in Kansas City. Conceding that this evidence was improper because tending to prove that defendant possessed a bad repu-tation when he had not testified, or otherwise placed his reputation in issue; yet, we find that the objections to this evidence did not point out the particular ground upon which it was rendered inadmissible. The only objections made were that it was "leading and sug-gestive." Therefore, its admission does not consti-

*Evidence.*

tute error. [State v. Pyles, 206 Mo. 1. c. 632.] The particular evidence complained of really had little or no bearing in the case, because it does not show that the police of Chicago ever visited the home of defendant's sister where it is claimed by defendant's witnesses that he was stopping.

The defendant was represented by able counsel; the case was fully and fairly tried, and, the record containing no reversible error, the judgment will be affirmed.

It is so ordered. *Walker, P. J.*, and *Faris, J.*, concur.