**STATE of Missouri, Respondent,**

**v.**

**Calvin WISHOM, Appellant.**

**No. 52277.**

Supreme Court of Missouri,
Division No. 2.

July 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Brunson Hollingsworth, Special Asst. Atty. Gen., Hillsboro, for respondent.

G. Carroll Stribling, St. Louis, for appellant.

FINCH, Presiding Judge.

Defendant was charged with stealing a motor vehicle by deceit in violation of §§ 560.156 and 560.161 (all statutory references are to RSMo 1959, V.A.M.S.) and with three prior felony convictions. Following a jury verdict of guilty and the necessary findings of prior convictions by the trial judge, defendant was sentenced to imprisonment for eight years, and he appeals.

Defendant was represented in the trial court and on appeal by appointed counsel, who handled the case ably and diligently.

The State's evidence would support the following statement of facts: On or about July 13, 1965, defendant had pending against him a charge of stealing an automobile and he had a conversation with James A. Bell, an attorney in St. Louis, about representing him in that case. Bell agreed to represent him for a fee of $500.00. Defendant had no money then, but Bell had a 1963 Oldsmobile two-door sedan which was in need of certain repairs. The left rear panel and door were damaged and there was a long scratch down the left side. Defendant looked over the car and agreed to repair it and then pay the difference between the cost of repair and the fee of $500.00. Defendant said he could take the car to Garner's filling station where he could repair it, and he knew where he could get a new panel so that he could put the car in tip-top shape. Bell entered his appearance as attorney for defendant, and on August 6, 1965, the car actually was turned over to defendant. Bell was going to Chicago for a few days and defendant represented that the repairs would be made and the car returned to Bell on August 10, when he returned. Bell testified he believed that defendant intended to repair the car and return it to him by August 10.

Bell returned from Chicago, but defendant did not deliver his car. When Bell did not hear from defendant for three or four days, he went by Garner's filling station but found that defendant did not work there. He finally located defendant, who then said that the car was in a shop at Hodiamont and Hamilton. He said he had not completed the repairs and needed a few more days. Bell went by Hodiamont and Hamilton but the car was not there. He then contacted defendant and took him by this location. The car was not there, and defendant told Bell that the man working on the car must have it out testing it. At that point, Bell observed that the license plate off of his Oldsmobile was on the defendant's car. Defendant said he had been using Bell's license plate, but Bell took it off defendant's car and kept it.

Defendant stated that he would have the car back the next day, but he did not. About two days later he called and said that he had located the car, that it had been re-

paired but it would cost $43.00 for parts. He would return the car as soon as he obtained the parts. After that Bell heard nothing for a week. Defendant then called and told Bell to come out to a service station on Ashland Avenue and bring $43.00 for the parts. Bell went out but neither defendant nor the car was there. The next day defendant called and said that the car was at Wentzville. Bell wanted to go out there but defendant said that only he could get it. He said he would bring the car in, but he did not do so.

On September 26, after defendant had called and said he would deliver the car that morning but failed to do so, Bell withdrew as attorney for defendant in the case then pending. At that time defendant displayed to Bell the car keys and bills for alleged work on the Oldsmobile, but the bills were dated in May and antedated the date when the Oldsmobile had been turned over to the defendant.

In October, Bell filed a complaint against defendant for stealing his automobile. On the day defendant was arrested, Bell saw him at the jail. Defendant told Bell that he would have to give him $925.00 before he would produce the car. He said he had put work and labor in the car, but he refused to show the car to Bell. This was the first time defendant had told Bell that he owed him money on the automobile.

Three weeks before trial herein, defendant came by Bell's home one night and said that if he would drive that night to some place near Kansas City, Bell's car was there, but Bell declined to do so.

While defendant was in jail, he told the police officer that he and a deputy sheriff had put Bell's car in a garage but he declined to say where it was, and he stated that he would die before he would give the car up.

The defendant took the stand and testified. We do not recite all of his testimony because, in testing the sufficiency of the evidence to determine whether defend-

ant's motion for a judgment of acquittal should have been sustained, we consider only the evidence favorable to the verdict. " * * * all the substantial testimony tending to support the verdict must be considered as true, and every legitimate inference therefrom favorable to the verdict must be indulged." State v. Taylor, Mo., 324 S.W.2d 643, 646, 76 A.L.R.2d 671.

A part of defendant's testimony was that he first took Bell's car to Garner's and ordered certain parts, but he didn't have the equipment to install them and hence he took the car to Mr. Jerry Ruffin at United Motor Exchange at 3321 North Union to do the work. He testified that Ruffin repaired the car but would not release it because not paid therefor. He also testified that he then drove the car to Red Bud, Missouri, where he said Ruffin had another shop, to keep Bell from coming to get the car without paying for the work. Jerry Ruffin, in rebuttal, testified that Bell's Oldsmobile had never been in his place for repairs and that he had no shop at Red Bud, Missouri, or any other place outside the City of St. Louis.

Defendant also produced a work order (in the amount of $907.16) which he said he received from Jerry Ruffin for repair of Bell's Oldsmobile. This was introduced as Defendant's Exhibit B. In rebuttal, Jerry Ruffin testified that he had not made out and delivered to defendant the work order marked Defendant's Exhibit B.

Defendant also identified but did not introduce another paper which was marked Defendant's Exhibit A. Defendant testified that this was a bill from Bob Ruffin, a brother of Jerry, located at 4901 Natural Bridge, which was a bill for parts and labor on the Oldsmobile in the total sum of $979.80. In rebuttal, Bob Ruffin testified that he had not worked on the Bell Oldsmobile and that the bill defendant presented from his place of business as being for work on the Bell Oldsmobile actually was a bill he had given to defendant representing a sale to defendant of a 1959 Chevrolet for

$120.00, and that the entries thereon relative to a 1963 Oldsmobile had been written by someone else. This paper was marked as State's Exhibit 1 and introduced in evidence.

The original information was filed on October 30, 1965, and was superseded by an amended information filed on November 12, 1965. The case was tried on March 8 and 9, 1966. At the conclusion of all the evidence, the State, over objection of the defendant, was permitted to file a second amended information. The first portion of each information simply recited the prior convictions and need not be set out herein in connection with the contentions made by the defendant. The pertinent portions of the two informations are as follows:

### Amended Information

" * * * on August 6, 1965, at the City of St. Louis aforesaid, did unlawfully and feloniously steal, take and carry away by means of certain false pretenses and deceit, to-wit: By pretending to make automobile repairs, which pretenses were made to JAMES BELL, and were false and untrue and were known to be false and untrue by the said CALVIN WISHOM and JAMES BELL, relying on said false statements and pretenses and deceit being deceived thereby was induced to part and did part with goods, wares, chattels, and personal property of JAMES BELL, to-wit: a Motor Vehicle, an automobile Oldsmobile make, 1963 model, with the felonious intent then and there to steal and permanently deprive the owner of the use thereof and convert the same to his own use by means of deceit; * * *."

### Second Amended Information

" * * * on or about the 6th day of August, 1965, at the City of St. Louis, Missouri, defendant and one James A. Bell, Attorney at law, did enter into an agreement, the gist of which agreement was that Mr. Bell would represent defendant in a criminal charge, and that, in lieu of paying Mr. Bell a fee, defendant would repair the 1963 Oldsmobile 98 two door automobile mentioned in evidence and would return said automobile to James A. Bell on or before the 10th day of August, 1965, and that although demand was made by said James A. Bell for the return of said automobile on numerous occasions since the 10th day of August, 1965, defendant failed, neglected and refused, and continues to fail, neglect and refuse, to return said automobile to James A. Bell, and in so doing, defendant did conceal and retain possession of said automobile by exercising domain over the automobile in a manner inconsistent with the rights of James A. Bell, the owner thereof, with the felonious intent thus and thereby to steal and permanently deprive the owner of the use of said automobile by means of deceit; * * *."

The primary contention by defendant on appeal is that the trial court erred in permitting the State, at the conclusion of all the testimony, to file its second amended information "because the second amended information set forth a new and different offense from that charged in the amended information upon which the case was tried and substantial rights of defendant were thereby prejudiced in violation of Rule 24.02."[1] Accordingly, we first must determine whether a different offense was charged in the second amended information.

In 1955 the legislature repealed 59 sections of the statutes which dealt with offenses against property and enacted new sections which consolidated larceny, embezzlement, obtaining money or property by false pretenses, and other similar offenses

---

1. Supreme Court Rule 24.02, V.A.M.R., is as follows: "The court may permit an information to be amended or an information to be substituted for an indictment at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

"into one crime, denominated 'stealing.'" State v. Zammar, Mo., 305 S.W.2d 441, 443. Sections 560.156 and 560.161 are the sections relating to this new single offense. This court observed that this and similar statutes in other states had been adopted to simplify prosecutions of persons for wrongful and criminal acquisition of property of others.

■ As noted in the Zammar case, a single offense of stealing is created by the statute. It can be committed in various ways, but there is only a single offense. It covers stealing whether by taking property without one's consent or by means of deceit. It includes, by definition in the statute, "to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property." § 560.-156, subsec. 1 (2). Both informations charged the same offense of stealing Bell's automobile by deceit. The second amended information merely recited more details of the conduct involved in the deceit concerning pretended repairs to Bell's automobile. It did not charge a different offense. .

Defendant cites and relies on State v. Kesterson, Mo., 403 S.W.2d 606, as authority for his contention that a different offense was charged in the second amended information. The Kesterson case holds that the language of the stealing statute alone in an information is insufficient and that the information must include enough in the way of additional allegations to notify defendant "as to the charge against which he must defend himself and likewise be sufficient to bar further prosecution for the same offense." State v. Kesterson, supra, l.c. 611. It is not authority for the proposition that if the court permits amendment of the allegations of the details of how the particular stealing was accomplished, it states a different offense.

■ We hold that the second amended information did not state a new or different offense and rule that contention against defendant.

This leaves the question of whether, under Supreme Court Rule 24.02, substantial rights of the defendant were prejudiced by the amendment. Defendant asserts prejudice on the basis that under the first amended information he could not have been convicted unless the State proved that his representations that he would repair the car were completely false at the time he made them, whereas, under the second amended information, it was necessary only for the State to prove that defendant failed to perform his agreement to repair and return the car, and instead concealed the car and kept possession with intent to steal it. We do not so narrowly construe the language of the first amended information. It does not allege only that the defendant represented or pretended that he intended to make repairs, which pretenses were false when made. Instead, it alleges that defendant stole the automobile by pretending to make automobile repairs, and that James Bell relied on and was deceived by said false statements, pretenses and deceit. Those allegations, in our opinion, are broad enough to permit the proof which the State in fact offered and on which defendant was convicted. We also observe that defendant made no objection to any of the State's evidence that it was not relevant to the offense charged, or that it went beyond the recitals of the information. There is nothing to indicate defendant was misled by the first amended information. It is true that the first amended information did not allege as much detail as the second amended information. The latter gives information which the State might have given if a motion for a bill of particulars had been filed and the trial court had sustained the motion, but we do not agree that the State, under the first amended information, had to stand or fall on proof that the defendant had no intention of making the repairs at the moment he obtained possession of the automobile. Both the first amended and second amended informations charged the defend-

ant with stealing a particular 1963 Oldsmobile sedan from James A. Bell by deceit by pretending to make repairs thereon, with the intent to steal and permanently deprive Bell of the ownership of said automobile. Proof or demands for return of the car without success and of false representations by defendant as to repairs to the car and with reference to its whereabouts was proper under either information.

When the State sought to file the second amended information, the defendant did not claim surprise and did not ask for time or for a continuance. Rather, his objection was on the basis that this constituted a different charge, that it changed the proof which the State was required to make to establish the charge, and that it deprived the defendant of an opportunity to offer a converse instruction which told the jury that if they found that the defendant intended in good faith to make repairs or cause repairs to be made at the time the car was delivered, they should find him not guilty. Those were the only objections to the amendment.

In the case of State v. Tunnell, Mo., 296 S.W. 423, the defendant was prosecuted for shooting into the dwelling house of another. During the trial of the case, the court permitted the State to amend the information to substitute the words "revolver or pistol" for the word "rifle." The defendant claimed that this amendment prejudiced his substantial rights. In overruling that contention, the court said, l.c. 425: "The statute in no wise limits the shooting into the dwelling house to a particular kind of firearm, but interdicts the shooting by means of any weapon or instrument that projects a missile capable of injury or damage. The act prohibited by the statute is the shooting into the dwelling house by means of a missile projected from some kind of weapon, not the shooting from a particular kind of weapon. It was then immaterial whether the dwelling house was shot into from a pistol or revolver, or from a rifle, so long as the shots came from one or the

other. We rule that the substitution of the words was a matter of form and variance without prejudice to the substantial rights of defendant on the merits, and was amendable under section 3853, Revised Statutes 1919, on the trial at the discretion of the trial court. The record fails to show that defendant sought any delay, or offered or filed an affidavit for that purpose as the statute of jeofails requires. There is no showing that the amendments allowed constituted error. State v. Walton, 255 Mo. 232, 164 S.W. 211." That language and reasoning is appropriate here.

■ We hold that substantial rights of the defendant were not prejudiced by the amendment of the information.

■ Defendant next contends that the trial court erred in overruling the defendant's motion for judgment of acquittal. We hold that the evidence was entirely sufficient to make a submissible case for the jury and to sustain a verdict of guilty. Taking the State's evidence as true, it is clear that the defendant received the car on the basis of representations that he would repair the automobile and return it by August 10. The car was not returned then and, although Bell repeatedly contacted the defendant thereafter in an effort to get his car returned, and the defendant made numerous representations that the car was in various places and was being or had been repaired and would be returned, the car in fact never was returned to Bell and he never saw it after it was turned over to the defendant on August 6. Defendant took the license plate off of Bell's car and put it on his own. The representation by defendant that the car had been repaired by Jerry Ruffin and was being held by him at Red Bud, Missouri, pending payment for the repairs, was false. Contrary to defendant's testimony, the work order and statement for the work allegedly done on the car, presented by defendant to Bell, were not made out by either Jerry Ruffin or Bob Ruffin. The evidence was sufficient to sustain the verdict of stealing by deceit and

the court did not err in failing to sustain defendant's motion for judgment of acquittal.

 Defendant complains of the giving of Instruction No. 1, the State's verdict-directing instruction, and of the failure of the court to give his converse Instruction No. A. In both instances, however, the complaint is on the basis of alleged error in permitting the filing of the second amended information. For example, defendant's brief asserts that "The trial court erred in giving to the jury Instruction No. 1, because it hypothesized facts necessary to establish the offense charged in the second amended information, which was improperly filed and did not require a finding of facts required to bring in a verdict of guilty under the amended information." We have already disposed of the complaint regarding the filing of the second amended information and hence there is no merit to defendant's complaint about the instructions. Furthermore, Instruction No. 1 fairly submitted to the jury the issue of defendant's guilt of stealing Bell's automobile by deceit. Instruction No. A would have told the jury that it must acquit defendant if they found that he intended in good faith to make or cause the repairs to be made at the time the Oldsmobile was delivered to him by Bell. Defendant was not entitled to that instruction and its refusal was not error.

 Finally, defendant complains that the sentence of eight years' imprisonment is excessive and extreme and amounts to the infliction of cruel and unusual punishment in violation of § 21 of Article I of the Constitution of Missouri, 1945. The maximum penalty under § 560.161 for stealing is ten years. Defendant argues that since defendant in the case of State v. Williams, Mo., 343 S.W.2d 58, received only a sentence of five years for stealing when convicted under the Habitual Criminal Act, any sentence of more than five years is excessive and violative of the constitutional prohibition against cruel and unusual pun-

ishment. This assignment is overruled. The establishment of limits of punishment is a legislative function. State v. Edmonson, Mo., 309 S.W.2d 616 [11]. The sentence was within limits which may be imposed, even on a first offender. § 560.161. Defendant was found to have three prior felony convictions and was sentenced pursuant to the Habitual Criminal Act. § 556.280. The trial court could have imposed a maximum of ten years' imprisonment. The sentence was not excessive. State v. Brewer, Mo., 338 S.W.2d 863 [12]; State v. Stumph, Mo., 349 S.W.2d 954 [4]. The fact that the trial court in State v. Williams, under the facts in that case, decided to impose a sentence of five years' imprisonment does not mean that all other trial judges in stealing cases, when imposing sentence under the Habitual Criminal Act, are limited to that length of sentence.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All of the Judges concur.