STATE of Missouri, Respondent,

v.

William C. HUGHES, Appellant.

No. 55188.

Supreme Court of Missouri,
Division No. 1.

Jan. 11, 1971.

John C. Danforth, Atty. Gen., John W. Cowden, Asst. Atty. Gen., Jefferson City, for respondent.

Kent D. Kehr, St. Louis, for appellant.

WELBORN, Commissioner.

William Cosby Hughes was found guilty by a jury in the St. Louis Circuit Court of burglary in the second degree and stealing. The trial court, acting under the Second Offender Act, set the punishment at nine years' imprisonment for burglary and four years' imprisonment for stealing, the sentences to run consecutively. This appeal followed.

According to the state's evidence, at about 1:00 P.M., December 5, 1968, a neighbor of Mr. and Mrs. Solovic who lived at 3628 Penrose in St. Louis noticed two Negro males on the Solovic property. One of the two entered the Solovic residence through a transom window and the

neighbor called the police. When the police arrived, they found the rear door of the Solovic house open and a door to the basement had been forcibly opened. On searching the basement, the appellant, William Cosby Hughes, was found in a closet. At the police station, search of Hughes' person produced two watches and a pin which were identified by the Solovics as missing from their residence. Solovic also testified that three one-dollar bills were missing and three one-dollar bills were found on Hughes.

Testifying in his own behalf, Hughes said that he had gone to a used car lot at Grand and Penrose and was returning to his parked auto when a police car drew up and two officers got out and questioned him about his identity and what he was doing in the neighborhood. Hughes said that he told the officers what he had been doing and that he was on a sixty-day parole and they told him that he was under arrest, suspected of burglary. Hughes says that the officers then took him to the kitchen of the Solovic residence where they questioned him about the other person who was supposed to have been with him. As they left the house, the officers asked him about the car keys and two of them put a hand in his pockets. At the police station, his pockets were emptied and the watches and pin appeared. Hughes said he hadn't seen them previously. He said that he had $7 in his pocket.

This diversity in the testimony gave rise to the first contention on this appeal. In the closing argument for the defendant, defense counsel pointed out what he considered to be discrepancies in the state's evidence and argued that they created reasonable doubt of the defendant's guilt. Then he stated:

"One other thing, and that is that the defendant has told the story he was in the neighborhood, there's no question about it. He was looking at a car on the corner at a used car lot. He parked down the street a bit in a parking lot. He was walking by.

The policemen came to him. They did have their guns in hand. One of the police officers did testify that he did carry a gun with him. I didn't ask him whether it was a shotgun or a rifle, but he did have a gun in his hands. I am like you, I would hate to believe that the officers would plant evidence in the defendant's pocket, but the defendant does have a record. The police, of course, are anxious to make a conviction. It's entirely possible that this could have happened and it's not for us to prove that this did happen, it is for the prosecutor here to prove his case and I submit to you that with all these questions, all these lingering doubts, that he has not proved beyond a reasonable doubt that it was the defendant and not some other who entered the premises. Thank you."

In the closing argument for the state, the assistant circuit attorney dealt with the claimed discrepancies and then the following occurred:

"These police are anxious to make a case Mr. Kehr said. I'll tell you this: I've never heard that kind of accusation made about any police officers on the St. Louis Police Department, that these three police officers come into court and lie. He wants you to bring your verdict to call these police officers liars. I've seen St. Louis Police Officers work twice as hard to prove a man innocent, to work like the dickens to find a man not guilty if they feel there's a chance an innocent man has been accused. I've seen them also work hard to bring in all the evidence if a man is guilty as charged and we've got one of the finest police departments in the United States and for him to accuse our St. Louis Police Officers of lying, of planting evidence, that's the most outrageous, ridiculous thing I've ever heard.

"MR. KEHR: I'm going to object.

"MR. FRIEDMAN: Well, I'm going to object—

"THE COURT: Just a moment, just a moment. He is permitted, Mr. Friedman,

to voice his objection. I don't know what his objection is going to be. You're not to rule on it.

"MR. KEHR: You Honor, I am not on trial in this case and I object to the prosecutor here accusing me of lying. I merely pointed out—I merely pointed out that this was the defendant's testimony and that it possibly could be true. I don't know these gentlemen but I said it's possible. I said I hate to think that it was true but it is possible and I object to him accusing me of lying in front of the jury.

"THE COURT: The objection is sustained to any inference that you may have been personally lying. I do not think that that was the intent or the purport of the argument.

"MR. FRIEDMAN: That was neither the intent nor the words, Your Honor, and I object to remarks of counsel.

"THE COURT: The objection is sustained to that. Let's proceed with the evidence in the case.

"MR. FRIEDMAN: I'm not saying for a minute that Mr. Kehr is lying. What I'm saying is this: when he accuses police officers of lying, I'm saying that's ridiculous and outrageous and that kind of conduct is not something that should go on in this court of law.

"MR. KEHR: Your Honor, I object again to him putting words in my mouth. I did not accuse the police officers of lying.

"THE COURT: The court cannot comment upon the evidence nor upon the argument. The jury will remember the evidence and the argument and remember the instructions of the court, especially with reference to argument.

"The objection has been ruled upon. It's overruled."

■ On this appeal, appellant's first point is that the above-quoted argument of the prosecutor was prejudicial to the right of the defendant to such a degree that defendant has a right to a new trial. He contends that the argument of the prosecutor was a personal attack on defense counsel, "attempting to vilify and discredit counsel."

Appellant's counsel insists that the prosecutor wrongly charged him with accusing the police officers of lying. That the police officers were lying would be the necessary import of defense argument quoted above. Defense counsel suggested that the police had "planted" the stolen goods on the defendant. The comment "The police, of course, are anxious to make a conviction" was defense counsel's comment. Of course he was essentially repeating the story told by his client, but he did advance suggestions of his own which could have been the basis for the prosecutor's retaliatory argument. We find no basis for the original objection, that the prosecutor accused defense counsel of lying. In any event, the court granted relief as to any inference to that effect and no further relief was sought. As for the second objection, it was based on defense counsel's assertion that he had not accused the police officers of lying. As above noted, the essential import of his argument was that the police had lied. The trial court did not err in overruling the objection voiced. The circuit attorney's response may have been to some extent an overreaction, but no reversible error is to be predicated on the trial court's ruling. State v. Coleman, Mo.Sup., 441 S.W.2d 46, 53–54[15]–[17]; State v. Tehee, Mo.Sup., 445 S.W.2d 285, 286–287[2]; State v. Fuller, Mo.Sup., 302 S.W.2d 906, 909–910[5, 6].

The prosecutor's argument did not infer that defense counsel was responsible for the defendant's version of the case. Cases cited by appellant holding such argument error are not in point. Nor is the situation comparable with that found in State v. Spencer, Mo.Sup., 307 S.W.2d 440, 446–447[9], [10, 11], relied upon by appellant. In that case the court considered argument to the effect that defense counsel "brow-

beat" witnesses prejudicial error where the record showed no basis for the charge. However, that error was cumulative with other errors which required reversal of the case. The argument was found to have "tended to degrade the defense" by accusing the defense attorney of acting improperly. Even if such error standing alone might have been grounds for reversal in Spencer, that decision is not here controlling in a case involving retaliatory argument.

 Appellant's second assignment of error is that the punishment imposed is so excessive as to constitute cruel and unusual punishment. The range of punishment for burglary in the second degree is two to ten years' imprisonment (§ 560.095, RSMo 1969, V.A.M.S.); for stealing in connection with a burglary, two to five years (§ 560.110, RSMo 1969, V.A.M.S.). The sentences of nine years for burglary and four years for stealing are obviously within the range of the authorized punishment. As such they do not constitute cruel and unusual punishment in violation of constitutional prohibitions. State v. Thompson, Mo.Sup., 414 S.W.2d 261, 268[6,7]; State v. Wishom, Mo.Sup., 416 S.W.2d 921, 927[7,8].

 The argument that the punishment should be viewed solely in the light of the articles stolen is without merit. The trial court had before it the evidence of a prior conviction for stealing an automobile, which was the basis for the Second Offender Act's application. In addition, testifying in his own behalf, appellant admitted prior convictions for burglary and mail theft. There is no reason for this court's substitution of its judgment for that of the trial court in the circumstances of this case.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.