**STATE of Missouri, Respondent,**

**v.**

**James R. WHITE a/k/a Tony Crabral, Appellant.**

**No. 53226.**

Supreme Court of Missouri, Division No. 2.

July 8, 1968.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 9, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Milton F. Svetanics, Jr., Sp. Asst. Atty. Gen., St. Louis, for respondent.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

EAGER, Judge.

Defendant was charged by information with felonious stealing in that he "did then and there wilfully and feloniously being employed by Forum Cafeteria, Inc., a Corporation, did embezzle, steal, take and carry away, by deceit, lawful currency of the United States of a value greater than $50.00, with the intent to convert the same to his own use and deprive the owner of the use thereof against the peace and dignity of the State." We have thus quoted the information because its precise language is material to our consideration of the case. The cause was submitted to the jury upon an instruction which required it to find that the defendant "wilfully, unlawfully, and feloniously, did steal, take, and carry away, lawful currency of the United States of a value greater than $50.00, the same being the property of Forum Cafeteria, Inc., if you so find, and without the consent of the owner thereof with the felonious intent to convert the same to his own use and to deprive the rightful owner of the use of said currency, * * *."

The jury found defendant guilty of "felonious stealing" and assessed his punishment "at 5 years." He was sentenced accordingly after the overruling of his after-trial motion. The case involves primarily a construction of § 560.156, RSMo 1959, V.A.M.S., our present "stealing" statute.

We will not need to state the facts in any great detail, for the single point made is that the court erred in submitting the offense of "stealing without consent of the owner" when defendant had been charged with "stealing by deceit." At the trial defendant was generally referred to by the witnesses as Tony Crabral. Forum Cafeteria, Inc., operates a chain of cafeterias in the Kansas City area; defendant had first been employed at its main downtown cafeteria, but was transferred to the cafeteria at the Antioch Shopping Center in Kansas City North as an assistant manager. He worked as such, largely in learning his duties, on February 14, 15 and 16, 1966, was off on February 17 and 18 (in the regular rotation) and was "terminated" on February 22 for having failed to report for three days. He was furnished a key to the rather small manager's office and was taught the combination of the safe. He did not receive a key to the outer doors of the cafeteria. Several other employees, including the manager, the first assistant manager, and the office girl also had office keys and the combination of the safe. Some employees were always in the building; at night these consisted of the crew which cleaned up and conducted certain parts of the cooking. Defendant was instructed concerning the evening "closing-up" process, including the transfer of money from the cashier's cage or desk to the safe, and also about getting change for the cashier from the safe during the day; he had become familiar with the operation of the safe. The manager generally left at from 7:00–8:00 p. m. The assistant manager on duty stayed until 9:00 p. m. or later and admitted the night crew, of which one Jefferson Martin was the foreman. None of that crew had a key

to the inner office or the combination of the safe. As indicated, the assistant manager on duty transferred the money to the safe, saw that it and the office door were locked, met the night foreman and, generally, locked the outside door of the cafeteria. It was closed to the public after 8:00 p. m.

Richard Siminis was the first assistant manager at the time in question; he was still in the cafeteria on Friday evening, February 18, 1966, attending to some incidental duties when he saw the defendant in the place at about 9:15; he asked defendant what brought him there and received some rather casual answer. The money had then been put away by Siminis, the safe closed, and the office door locked. Defendant was not on duty at any time during that day or evening. Siminis had not counted the money which he had transferred; he was not permitted to testify to the amount shown on the cashier's tapes, but he did testify that the money he put in the safe was for a full day's operation and that it was more than $1,000.00. This witness saw defendant leave by the customer "out" door, which was also used by some of the employees who were leaving in the evening.

The night foreman saw defendant in the cafeteria after 11:00 p. m. on the same evening, namely, February 18, 1966. The foreman was engaged in some work in the kitchen and defendant passed by about ten feet from him; he regarded this as unusual so he proceeded to look further or investigate. He testified that he then saw defendant in the manager's office, in front of the safe, either sitting or squatting down and facing the safe; the office door was open and the lights were on. At that time defendant turned and saw the foreman and told him that he had forgotten something and had come back to get it; however, he continued whatever he was doing. The foreman then went back to his work. At the time in question, one of the outer doors was unlocked, since some of the employees had just left.

The next morning the manager discovered that substantially all the money was gone from the safe; apparently $10 to $20 and some change was left. The police were notified and came to investigate. No evidence of any forced entry was found, either to the office or the safe. Defendant never reported back for work, although he was due to do so that morning, February 19.

Counsel for defendant filed a motion for acquittal for the reasons, among others, that the information failed to allege all essential elements and did not notify defendant of the offense charged, and that the evidence failed to establish a stealing by deceit. This was overruled and the case was submitted, as already noted, as one of stealing, taking, and carrying away money without the consent of the owner.

■ Section 560.156 was enacted in 1955. That act replaced many criminal statutes which were thereby repealed and which covered larceny, embezzlement, false pretenses and sundry allied offenses, and also included many definitions. The object was, of course, to eliminate technicalities, errors in charge and proof, and reversals on account of the complicated nature of the existing situation. State v. Wishom, Mo., 416 S.W.2d 921; State v. Gale, Mo., 322 S.W.2d 852; State v. Mace, Mo., 357 S.W.2d 923. While the new statute provided and created a single offense of "stealing," it provided further that this could be committed in two different ways. Thus, in Wishom, supra, the court said at 416 S.W.2d loc. cit. 925: "As noted in the Zammar case [State v. Zammar, Mo., 305 S.W.2d 441], a single offense of stealing is created by the statute. It can be committed in various ways, but there is only a single offense. It covers stealing whether by taking property without one's consent or by means of deceit. It includes, by definition in the statute, 'to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, ob-

taining, using, transferring, concealing or retaining possession of his property.' § 560.156, subsec. 1(2)."

This is obvious, for the statute itself prohibits the intentional stealing of another's property, "either without his consent or by means of deceit." Thus the statute must be considered as embracing these two subdivisions or methods, which should be differentiated in pleading and proof. We are bound by the act as enacted, and not merely by the general intent to create a single offense. State v. Eye, Mo., 415 S.W.2d 729.

In State v. Kesterson, Mo., 403 S.W.2d 606, in Wishom, supra, in State v. Perkins, Mo., 380 S.W.2d 433, and (indirectly) in State v. Miles, Mo., 412 S.W.2d 473, our court has considered the offense of stealing "by means of deceit." While that method of accomplishing the crime is not presumably identical with the former crime of embezzlement, the two involve various similarities. Stealing by means of deceit would normally involve some form of misrepresentation, falsification, concealment, trick, or misleading. Thus, in Kesterson, where the information only charged that the defendant stole certain property (money) "by means of deceit" and the evidence disclosed a long and devious course of misrepresentations, fraud, and an extended scheme to mislead, the information was held insufficient. The court said there, in part, at 403 S.W.2d loc. cit. 611: "We hold that § 560.156, in describing the offense of theft by deceit, does use generic terms and that it is necessary that indictments or informations thereunder recite sufficiently the conduct constituting a theft by deceit with which a defendant is charged as to notify him as to the charge against which he must defend himself and likewise be sufficient to bar further prosecution for the same offense. We also hold that the information must charge that the victim relied on the misrepresentations with which defendant is charged. The information herein did neither." The court further held that the omissions in the information were so fundamental that the defect was not waived by a failure to move for a bill of particulars. See also to the same general effect: State v. Fenner, Mo., 358 S.W.2d 867; State v. Perkins, Mo., 380 S.W.2d 433; State v. Wishom, Mo., 416 S.W.2d 921; State v. Miles, Mo., 412 S.W.2d 473.

The offense of stealing as pleaded and as proved by evidence of a taking "without the consent" of the owner stands in a somewhat different situation. In Miles, supra, an information so charging was held sufficient even without the customary additional words of "take and carry away"; the property was specifically described and the taking was sufficiently proven. The court referred to that charge as one "laid under the first alternative of paragraph 2" of the section, i. e., to a stealing "without the consent" of the owner. It expressly distinguished the case from Kesterson, supra, where "deceit" was used as a generic term and where the court held that the information must "affirmatively recite the conduct alleged to constitute stealing." It further noted that Kesterson involved "a specialized form of stealing; stealing by means of deceit."

We hold that this information does not sufficiently allege a felonious stealing without the consent of the owner. In the first place, the latter words are not used; secondly, the charge in the information is so materially complicated by the allegations of employment, embezzlement and deceit, that it cannot be considered as such. Those allegations are not mere surplusage. They must be considered as an attempt to charge a stealing by deceit, although inadequately. Under our authorities as now constituted, we must and do recognize the two alternative methods of stealing; one of the two must be properly alleged and proven, unless the state might conceivably choose to allege both in the alternative and in separate counts and elect later which to submit. The defendant is entitled to know, from the allegations, *what* charge he must defend against, and the allegations must

also be sufficient to bar a subsequent prosecution for the same acts. See, specifically, Kesterson, supra; Fenner, supra; State v. Mace, Mo., 357 S.W.2d 923.

In State v. Zammar, Mo., 305 S.W.2d 441 (which seems to have been the first opinion construing the new statute), the court apparently held that a charge of stealing under the first alternative was sufficiently alleged although the indictment omitted the words "without the consent" of the owner. That case, however, arose upon an indictment for the burglary of a hardware store and for the stealing of several guns in connection with the burglary; the indictment also alleged that the guns were taken and carried away. The court merely held, on this point, that a stealing or taking "without right or leave and with an intent to keep, wrongfully * * *" was obviously a taking without consent. Our circumstances are in nowise similar, and we are not called upon to affirm or overrule that holding. We do not recommend the omission of the statutory words.

■ Further, the confusion caused by the allegations in the present information of employment, embezzlement, and "by deceit" assuredly eliminated any clear-cut charge of stealing without consent; these may not be considered as surplusage. The information does not sufficiently advise the defendant of any such charge, and we hold it insufficient. We have already held the information insufficient under the second alternative. We consider the sufficiency of the information independently under Rule 28.02, V.A.M.R., but counsel also attacked the information in his motion for acquittal at the close of the evidence and in his after-trial motion.

■ We hold further that the submission of the alternative offense of "stealing without the consent of the owner" in Instruction No. 2 constituted reversible error because that offense was not the one charged in the information. We have universally held, in civil and criminal cases, that a submission must be within the scope of the pleadings. One cannot be charged with one offense, or with one form of an offense, and convicted of another. State v. Ballard, Mo., 394 S.W.2d 336. There the court said in part, loc. cit. 342: "We do not pretend to hold whether or not the evidence would have supported a charge of stealing in St. Louis County, for no objection is made to the sufficiency of the evidence, and there was no such charge; we merely hold there was a fatal variance between the charge and the submission, and that the reasonable and probable result was to mislead the defendant. He is entitled to know the nature and cause of the accusation. State v. Fenner, Mo., 358 S.W.2d 867, 870." See also: State v. Hawkins, Mo., Banc, 418 S.W.2d 921; State v. Watson, 356 Mo. 590, 202 S.W.2d 784. It is unnecessary to consider the contention that defendant was deprived of due process and of the right to know the "nature and cause of the accusation" under the Federal and State Constitutions. These questions were not properly raised at the trial, nor were they fully raised in the after-trial motion for judgment or for a new trial; however, we reach the same result in holding that there was an impermissible variance.

We have considered the state's contentions that only one offense is provided by the stealing statute, namely, the "wrongful criminal acquisition by one person of the property of another," that technical distinctions should be avoided, and that even in our prior embezzlement statutes no fraud or deceit was required; further, that although the term "deceit" was used in the information, this was a "matter of description as required by the Kesterson and Miles cases" and that this was not really material. The latter statement shows a complete misconception of those opinions.

Counsel conclude that the defendant was fairly apprised of the charge, that he was fairly tried, and that he sustained no prejudice. We are wholly unable to agree. In our prior opinions we have held to the

contrary, and the present contentions are denied.

The judgment is reversed and the cause is remanded for such further proceedings as may be deemed appropriate.

All of the Judges concur.