**STATE of Missouri, Respondent,**

v.

**John W. NEWHART, Appellant.**

**No. KCD 26348.**

Missouri Court of Appeals,
Kansas City District.

Dec. 3, 1973.

J. Arnot Hill, Hill & McMullin, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before DIXON, C. J., and PRITCH-ARD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

A jury of defendant's peers returned a verdict finding him guilty of stealing more than Fifty Dollars (Section 560.156 RSMo 1969, V.A.M.S.), but were unable to agree on his punishment. Allocution was granted, judgment was entered, defendant was sentenced by the court to three years in the Missouri Department of Corrections (Section 560.161 RSMo 1969, V.A.M.S.) and probation was denied. Defendant appeals from the judgment and sentence entered.

Defendant levels seven charges of error on appeal. Paraphrased, they are: ONE, the information upon which defendant was put to trial was fatally defective in that it charged several different acts in the disjunctive; TWO, the information was fatally defective in that it did not charge defendant with stealing without the consent of the owner or by deceit, thereby failing to furnish a sufficient description of the offense to enable defendant to make his defense, to avail defendant of a conviction or acquittal for protection against further prosecution for the same offense, and to sufficiently inform the court of the charge in order that it might determine whether the evidence was sufficient as a matter of law to support a conviction; THREE, the

trial court erred in failing to permit defendant to testify he had no intent to steal the property in question; FOUR, the state's verdict directing instruction (Instruction No. 3) was prejudicially erroneous in that it directed the jury to find defendant guilty if he "did steal, or use, or transfer" the property in question without requiring the jury to find that "use" or "transfer" constituted a criminal offense and, additionally, was prejudicially erroneous in that it did not submit essential elements of the charged offense; FIVE, the court erred in giving Instruction No. 4 because it constituted a comment on the evidence by the court and was unsupported by the evidence; SIX, the court erred in refusing to give Instruction No. 10, requested by defendant, since it was a correct statement of law as to the issue of criminal intent and the jury was not otherwise instructed on that issue; SEVEN, the court erred in overruling defendant's motion for judgment of acquittal at the close of all the evidence because the evidence favorable to the verdict was not sufficient to sustain a conviction as a matter of law.

The facts deemed essential to disposition of the appeal unfold as follows: On October 27, 1970, at defendant's office in Savannah, Missouri, a real estate contract reciting $16,000.00 as the total purchase price was entered into between Donald L. Tittsworth and Virginia L. Tittsworth as sellers and A. E. Richardson as purchaser. Purchaser delivered to defendant his personal check in the amount of $1,600.00, made payable to defendant, representing the "earnest money" payment on the contract.

On December 30, 1970, purchaser left his check, in the amount of $14,400.00, made payable to the sellers, at defendant's office, same representing the balance of the purchase price, and received a warranty deed that had been executed by sellers. On December 31, 1970, sellers appeared at defendant's office and endorsed in blank the purchaser's $14,400.00 check, and then delivered the endorsed check to defendant. Contemporaneously, defendant delivered to the sellers a check in the amount of $7,975.40, drawn upon an "escrow account" carried by defendant in the First Community State Bank, Savannah, Missouri. The $7,975.40 check represented the total purchase price due sellers under the real estate contract, less $8,024.60 which was the amount needed to pay and satisfy the unpaid principal and accrued interest of a note held by the Veterans Administration, which was secured by a deed of trust on the real property conveyed by the sellers to the purchaser. It was understood by the sellers and the purchaser, and by defendant, that defendant would pay and satisfy the note held by the Veterans Administration from that portion of the total purchase price retained by defendant. The defendant deposited purchaser's $14,400.00 check to the referred to "escrow account" in the First Community State Bank on December 31, 1970. Sellers, on December 31, 1970, presented their $7,975.40 check to and received payment from the First Community State Bank.

Bank records disclosed checks in the amounts of $3,600.00, $900.00, $7,975.40, $1,000.00 and $450.00 charged against defendant's "escrow account" on December 31, 1970, and that the balance of defendant's "escrow account" at the close of business on December 31, 1970, was $631.31. Bank records further disclosed that from the close of business on December 31, 1970, to and including September 13, 1971, when defendant's "escrow account" was closed, there was never a sufficient balance in defendant's "escrow account" to cover a check for the amount required to pay and satisfy the unpaid principal and accrued interest of the note held by the Veterans Administration.

In April, 1971, the purchaser received a notice from the Veterans Administration advising him that the note was unpaid. The purchaser advised defendant of the notice and was told by defendant that a check had been mailed to the Veterans Administration on February 23, 1971, in full payment of the note, but a release had not

yet been received. Approximately thirty days later, the purchaser received a similar notice from the Veterans Administration and again contacted defendant. The purchaser testified defendant advised him on the second occasion that he was going to stop payment on the referred to February 23, 1971, check and issue another check and send it to the Veterans Administration. The purchaser received a third similar notice, which he advised the defendant of, and was again told by defendant that the loan would be taken care of. Sometime during September, 1971, the purchaser was advised by the Veterans Administration that foreclosure proceedings were going to be instituted. The purchaser conveyed this latter information to defendant and told defendant that if the note was not paid, he, the purchaser, was going to do something about it. On this occasion defendant gave the purchaser a check dated September 21, 1971, drawn on defendant's "escrow account", payable to the Veterans Administration, to pay the loan. The purchaser mailed this check to the Veterans Administration, but it was lost by the Veterans Administration. The note held by the Veterans Administration was finally paid on October 28, 1971, by means of a cashier's check obtained and delivered by defendant to the Veterans Administration's office in Kansas City, Missouri.

The First Community State Bank received a stop payment order from defendant on September 21, 1971, as to the check which defendant said was dated February 23, 1971, and mailed to the Veterans Administration and another stop payment order on October 27, 1971, as to the check dated September 21, 1971, payable to the Veterans Administration.

Defendant testified that he did not "get around" to sending a check to the Veterans Administration in payment of the note until February 23, 1971. The referred to February 23, 1971, check, according to defendant, was drawn on defendant's "escrow account" at the First Community State Bank, Savannah, Missouri. Further, the February 23, 1971, check, according to defendant, was never presented for payment to the First Community State Bank. Defendant testified he made several inquiries of the Veterans Administration concerning why the February 23, 1971, check was never presented for payment.

Defendant further testified that during the period in question, he deliberately kept a minimal balance in his "escrow account" at the First Community State Bank, since there were outstanding judgments against him which might give rise to garnishments. Additionally, defendant testified that he kept sufficient cash in his office safe to cover any outstanding checks drawn on his "escrow account" and when checks drawn on the "escrow account" were presented for payment, the First Community State Bank would treat them as sight drafts and he would pick them up over the counter by the payment of cash. With reference to the February 23, 1971, check, which defendant testified he drew and mailed to the Veterans Administration, he testified that when it was presented for payment at the First Community State Bank, he was going to pick it up by the payment of cash. An officer of the First Community State Bank testified that during the period in question checks drawn on defendant's "escrow account", when presented for payment, were treated as sight drafts and defendant would be notified and he would pick up such checks, over the counter, by payment of cash.

Points ONE and TWO leveled by defendant lend themselves to joint treatment and disposition. Preliminarily, Sections 560.156 and 560.161, RSMo 1969 compel close judicial scrutiny because of an aura of confusion on the part of the bar in applying them to varying factual situations. This aura of confusion appears to emanate from a failure to perceive the basic and fundamental changes effected by the initial passage of five new sections relating to stealing and kindred offenses in 1955 by the General Assembly (now known as Sections 560.156 and 560.161, RSMo 1969, V.

A.M.S.), the underlying philosophy that brought about the changes and an aversion to believe that the basic and fundamental language employed to effect the changes means what it says. The basic and fundamental changes effected find clarity of expression in State v. Zammar, 305 S.W.2d 441, 443 (Mo.1957):

> "In 1955 the Legislature, by Senate Bill 27, repealed 59 separate sections of the statutes relating to offenses against property, and enacted in lieu thereof five new sections (now known as § 560.156 and § 560.161) relating to the same subject, and thereby consolidated, combined or merged larceny, embezzlement, obtaining money or property by false pretenses and other kindred offenses into one crime, denominated 'stealing.' "

The underlying philosophy that brought about the changes finds equal clarity of expression in State v. White, 431 S.W.2d 182, 184 (Mo.1968):

> "The object was, of course, to eliminate technicalities, errors in charge and proof, and reversals on account of the complicated nature of the existing situation."

Section 560.156, supra, utilizes basic and fundamental language to effect the mentioned changes and to achieve the objectives inherent in the underlying philosophy that initiated the changes. Continued aversion on the part of the bar to recognize the meaning and implication of the basic and fundamental language employed will result in continued confusion which will take its toll unfairly from the time of persons charged with stealing and, as well, from both the bench and the bar.

█ Hopefully, the basic and fundamental language employed by Section 560.156, supra, can be brought into sharp focus by the following analysis. Section 560.156, supra, is captioned, "Stealing—elements of offense". Sub-section (1) of Section 1 thereof defines "property" which may be the subject of the offense of stealing. Sub-section (2) of Section 1 thereof defines the offense of stealing, to-wit, "to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property." The language "by taking, obtaining, using, transferring, concealing or retaining possession" merely spells out the means of "exercising dominion" over the property of another, but does not constitute or spell out the methods of perpetrating the offense of stealing. Section 2 thereof makes it "unlawful" to "intentionally steal the property of another" and spells out two methods by which the offense of stealing can be perpetrated, "either without . . . consent or by means of deceit".

█ State v. Zammar, supra; State v. Gale, 322 S.W.2d 852 (Mo.1959); State v. Perkins, 380 S.W.2d 433 (Mo.1964); State v. Wishom, 416 S.W.2d 921 (Mo.1967) and State v. White, supra, have firmly established that Section 560.156, supra, creates but a single offense, namely, stealing. State v. Kesterson, 403 S.W.2d 606 (Mo. 1966) and State v. White, supra, have solidly established that the single offense of stealing created by Section 560.156, supra, may be perpetrated in one of two ways— without consent or by deceit. State v. Kesterson, supra, has removed from the realm of doubt that when an indictment or information purports to charge that the stealing was perpetrated by deceit, sufficient facts must be recited in the indictment or information to spell out the conduct alleged to constitute deceit, since deceit is a generic term. State v. White, supra, although not specifically ruling on the precise point, cautions against omitting the statutory words "without . . . consent" of the owner, if the indictment or information purports to charge the stealing was perpetrated without the consent of the owner rather than by deceit, and, additionally, that the two methods of perpetrating the offense of stealing "should be differentiated in pleading and proof". The reso-

lute principle [State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198, 203, 204 (banc 1954) and authorities therein cited] that where a statute disjunctively describes several acts which may result in the commission of but a single offense, the indictment or information, if more than one act is alleged, must charge the several acts in the conjunctive, applies, rationally and logically, to Section 560.156, supra, if more than one means of "exercising dominion" over the property of another is charged or if more than one method of perpetrating the offense is charged.

Stripped of its formal portions, the substantive portion of the information in this case reads as follows:

"* * * defendant, did unlawfully, and willfully, and feloniously steal, or use, or transfer the personal property of A. E. Richardson, doing business as A. E. Richardson Farms, and Donald Tittsworth and Virginia Tittsworth, the sum of Eight thousand Sixty-five and 96/100 Dollars ($8,065.96), with the felonious intent then and there to exercise dominion over said property in a manner inconsistent with the rights of the owner thereof by using, transferring and retaining possession of said property while acting as bailee thereof, * * *."

Although not raised by defendant on this appeal, the evidence appears to raise a viable question as to who was the "owner" of the Eight thousand Sixty-five and 96/100 Dollars ($8,065.96) that was the subject of the charged offense. Was the "owner" the sellers of the property, the purchaser of the property, or all three?

Defendant vigorously asserts in Points ONE and TWO that the language "steal, or use or transfer" the property as alleged in the first portion of the information charged three separate acts in the disjunctive, thereby rendering the information "fatally defective", and, further, failure of the information to charge that the alleged offense of stealing was perpetrated by de-

fendant by either deceit or without consent likewise rendered it "fatally defective".

■ Defendant's dual attack on the information as being "fatally defective" can only be assumed to mean that the information totally and completely failed to charge any criminal offense, not, merely, that it imperfectly charged the offense of stealing. Therefore, if the information was "fatally defective" in the sense argued by defendant the trial court did not and could not acquire jurisdiction originally or subsequently to proceed. State v. Hasler, 449 S.W.2d 881 (Mo.App.1969).

■ The information in the case is not "fatally defective" in the sense argued by defendant. In State v. Mace, 357 S.W. 2d 923 (Mo.1962), the information, stripped of its formal portions, read:

"* * * between the dates of September 1st, 1960 and December 15, 1960, Robert Mace did wilfully and feloniously steal automobile tires of a value in excess of Fifty dollars ($50.00) lawful money of these United States * * *."

Although not dispositive of the appeal the Court in *Mace,* 1.c. 924, stated:

"Defendant does not in this court assert that the information fails to charge him with a criminal offense. *It is evident that it does.* Sections 560.156, 560.-161, RSMo 1959, V.A.M.S. (to which revision all statutory references are made unless otherwise indicated). But that fact does not dispose of the question here presented: Does the information inform defendant of the particulars of the offense sufficiently to prepare his defense?" (Emphasis added.)

Although the information in the instant case is not "fatally defective", it did imperfectly charge defendant with the offense of stealing for the reasons assigned by defendant under Points ONE and TWO. This poses a critical determination. Were the imperfections of such a character that defendant waived them by his failure to

raise them before trial by a motion as provided for by Criminal Rule 25.06, V.A.M.R., or by means of a motion for a bill of particulars as provided for in Criminal Rule 24.03? As to the imperfection delineated under Point ONE, the answer is yes, it was waived, since the language complained of in the first portion of the information, "steal, or use, or transfer", although stated in the disjunctive, was properly and correctly stated in the conjunctive in the latter portion of the information by use of the language "by using, transferring and retaining possession of said property." Waiver is concluded for two reasons, (1) the disjunctive allegation in the first portion of the information is surplusage, and (2) since the evil of disjunctive allegations is that they fail to constitute an allegation of any of the matters disjunctively alleged, the conjunctive allegation in the latter portion of the information cured the disjunctive allegation in the first portion. This is not to say that the disjunctive allegation complained of was not subject to attack by a proper motion or bill of particulars before trial. This is to say, however, failure to attack such a disjunctive allegation under the particular circumstances existing before trial constituted a waiver to make a post trial attack. As to the imperfection delineated under Point TWO, the answer is no, it was not waived, because it was an imperfection of such a fundamental character that the information failed to sufficiently apprise defendant of the fundamental particulars of the offense with which he was charged so as to enable him to make his defense. Article I, Section 18(a), Constitution of Missouri, V.A.M.S., mandates that the accused in criminal prosecutions has the right to "demand the nature and cause of the accusation". It is either implicit or explicit in this constitutional mandate that an indictment or information must sufficiently apprise an accused of the fundamental particulars of the offense with which he is charged so as to enable him to make his defense. State v. Mace, supra; State v. Fenner, 358 S.W.2d 867 (Mo.1962); State v. White, supra.

This court is not unmindful that the Supreme Court in State v. Zammar, supra, held, "A taking without right or leave and with an intent to keep, wrongfully, is obviously a taking without the consent of the owner, . . ." thereby precluding the necessity of using the precise statutory language in the information, "without . . . consent" of the owner. Nor is this court unmindful that the Supreme Court in State v. White, supra, cautiously refrained from affirming or overruling *Zammar* in the respect just mentioned. The facts in the instant case, however, are clearly distinguishable from the facts in *Zammar*. In *Zammar* the stealing was in connection with a burglary. In the instant case it is not clear from the information, particularly when viewed in the light of the state's evidence, whether it sought to charge that defendant's initial possession of the property was obtained by defendant misrepresenting to the owner or owners that he would see that the Veterans Administration note was paid and discharged, which bespeaks of stealing perpetrated by deceit, or whether it sought to charge that defendant's initial possession of the property was devoid of any criminal misrepresentation or deceit, but that defendant, after lawfully obtaining possession of the property, retained possession of and used the property without the consent of the owner or owners, which bespeaks of stealing perpetrated without consent. The Supreme Court in State v. White, supra, held an information that bespoke of both stealing perpetrated by deceit and stealing perpetrated without consent did not adequately apprise a defendant that he was obligated to defend against a charge of stealing without consent, when the latter was not used in the information. This court, under the authority of State v. White, supra, holds that the information in the instant case, by reason of the imperfection leveled against it under Point TWO, did not sufficiently apprise defendant of the fundamental particulars of the offense with which he was charged so as to enable him to make his defense, and,

further, for the reasons and authorities heretofore cited, such imperfection, although not rendering the information "fatally defective" was of such a fundamental character it could not be and was not waived, thus requiring reversal and remand of this case for such further proceedings as may be deemed appropriate.

Reversal and remand is additionally compelled because, as asserted by defendant under Point FOUR, the state's verdict directing instruction (Instruction No. 3) was prejudicially erroneous.

There is one principle of law relative to verdict directing instructions in criminal cases so basic and fundamental that its violation irrevocably precludes a finding of harmless error—a verdict directing instruction must require a finding of all the constituent facts necessary to constitute an offense in order to support a conviction. State v. Commenos, 461 S.W. 2d 9 (Mo. banc 1970); State v. Griggs, 361 Mo. 758, 236 S.W.2d 588 (1951); State v. Stewart, 329 Mo. 265, 44 S.W.2d 100 (1931); State v. Gentry, 320 Mo. 389, 8 S.W.2d 20 (1928); State v. Higgins, 252 S.W.2d 641 (Mo.App.1952). Instruction No. 3 directed the jury to find the defendant guilty if they found beyond a reasonable doubt that he did "steal, *or use or transfer*" the property in question. (Emphasis added.) Instruction No. 2 defined "steal" as meaning " . . . to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner either *by* taking, obtaining, using, transferring, concealing or retaining possession of his property." (Emphasis added.) Since "stealing" as separately defined in Instruction No. 2 employed the word *by* to describe the various means of "exercising dominion" over the property of another, and Instruction No. 3, the verdict directing instruction, disjunctively directed the jury to find the defendant guilty if "he did steal, or use, or transfer" the property in question, the language, "or use, or transfer", as employed in the verdict directing

instruction, can only be construed as alternatively directing the jury to find the defendant guilty of using or transferring the property, even though such use or transfer was in a context other than as a means of "exercising dominion" over the property in question. More succinctly stated, the jury was, alternatively, permitted to find the defendant guilty if he "did . . . use or transfer" the property even though such "use or transfer" was done absent any criminal intent to steal the property. The vice of the verdict directing instruction in this respect is compounded by the evidence, particularly the evidence introduced by the defendant, if believed by the jury, that on February 23, 1971, he sent a check to the Veterans Administration to satisfy the note. In State v. Commenos (Mo. banc), supra, the court addressed itself to a situation analogous in principle to that in the instant case and held, 461 .S.W.2d 1.c. 12:

"However, as defendant points out, this instruction did not stop with the statutory definition of 'stealing.' It added the following sentence: 'The moving of the property alleged to have been stolen from the place where it was before, however slight, is sufficient to constitute stealing.' As previously indicated, defendant contends that this language, when applied to the evidence in this case, told the jury that it could convict defendant if he simply moved the dress, irrespective of whether his intent was to keep the dress or to show it to his wife. We conclude that defendant's position in this connection is well taken. The sentence is not qualified in any way, but simply makes the bald statement that moving of the property from the place where it was before, however slight, is sufficient to constitute stealing. That is not correct unless the movement of the article was to intentionally steal it. Consequently, we conclude that inclusion of that sentence in Instruction No. 1 was misleading and erroneous and that as a result the case must be reversed and remanded for a new trial."

There is no escape from the conclusion that the verdict directing instruction in the instant case was prejudicially erroneous for the same reasons.

Additionally, said instruction is silent as to the method allegedly employed by defendant to perpetrate the offense of stealing. Arguendo, if, as the state contends, the information charged defendant with stealing without consent of the owner, the verdict directing instruction was prejudicially erroneous in omitting such as a required finding by the jury in order to sustain a verdict of guilty, since the method found to have been employed to perpetrate the offense of stealing must be consistent with the method of perpetration charged in the information. State v. White, supra. The silence of the verdict directing instruction in this respect left the method of perpetration solely to the jury without guidance of any kind.

Point SEVEN asserted by defendant, that the evidence most favorable to the verdict was not sufficient to sustain defendant's conviction, fails. It is basic that all substantial evidence supporting the verdict will be considered as true, and all legitimate inferences therefrom that support the verdict will be indulged. State v. Wishom, supra, and State v. Taylor, 324 S.W.2d 643 (Mo.1959). Measured by this criterion, it suffices to say the jury could find that defendant stole the property in question by retaining possession of and using it without the consent of the owners.

Points TWO, FOUR and SEVEN leveled by defendant being dispositive of this appeal, their disposition makes unnecessary any ruling on Points THREE, FIVE and SIX. In the event of retrial, the state has been made aware of the grounds of purported error leveled by the defendant under Points THREE, FIVE and SIX, and will, it is assumed, be governed accordingly.

The judgment is reversed and the cause remanded for such further proceeding as may be deemed appropriate.

All concur.