STATE of Missouri, Respondent,

v.

Tom PUCKETT, Appellant.

No. 41910.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 30, 1980.

Ronald E. Pedigo, Public Defender, Farmington, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Steven W. Garrett, Asst. Attys. Gen., Jefferson City, Gary Stevenson, Pros. Atty., Farmington, for respondent.

CRIST, Judge.

Defendant has appealed his jury conviction and subsequent three year sentence for stealing over $50.00. Section 560.156, RSMo. 1969. We affirm.

On Appeal, defendant has alleged three points of error, to–wit: (1) That the information under which he was charged was fatally defective because it failed to specify whether he was charged with stealing "without the consent of the owner" or "by means of deceit," and thus did not adequately apprise him of the fundamental particulars of the crime so as to enable him to prepare a defense; (2) that there existed a fatal variance between the "improper" information noted above and the verdict director instruction which instruction *did*, in fact, refer to his having stolen the property in question *without the consent of the owner*; and (3) that the evidence was insufficient as a matter of law to establish defendant's guilt.

Defendant's first contention is somewhat duplicitous in that it alleges the information was *both* fatally defective and imperfectly drafted. There exists a definite distinction between these two concepts as it is quite possible for an "imperfect" information to fall far short of the "fatally defective" standard. However, the converse is never true.

Stripped of its verbiage, the information at issue reads thus:

[Defendant] did ... appropriate ..., in a manner inconsistent with the rights of the owner ... by taking the property....

■ Now, "fatally defective" conceives that the trial court lacked jurisdiction to proceed inasmuch as the information or indictment failed to allege facts which would actually comprise a crime. *Paxton v. State*, 565 S.W.2d 750 (Mo.App.1978). Hence, no crime equals no jurisdiction to proceed. On the other hand, the term "imperfect" contemplates an information wherein a crime has been alleged but which lacks certain fundamental particulars necessary to a proper understanding of the charge. This latter consideration is important as it primarily relates to a defendant's ability to prepare a defense. *State v. Newhart*, 503 S.W.2d 62 (Mo.App.1973). Thus, it must appear that the "imperfection(s)" hampered the defendant's ability to comprehend the charge and prepare his defense.

■ Application of the foregoing precepts to the information at issue reveals that "fatally defective" is hardly the appropriate or applicable term as the information does, in fact, allege a crime, and essentially recites the statutory language verbatim. Section 560.156.1(2), RSMo. 1969. However, it does fail to specify with precise language whether the stealing was perpetrated "by deceit" or "without consent," the two recognized means by which the crime may be committed. Section 560.156.2, RSMo. 1969. This omission necessitates a determination of whether defendant suffered a resultant inability to understand the nature of the charge. We now attempt to trace a line of cases which bear a marked resemblance to that now at hand and which are illustrative of the issue we need resolve.

*State v. Zammar*, 305 S.W.2d 441 (Mo. 1957), held that an indictment which did not, "in express terms state that the act of stealing was committed either without the owner's consent or by means of deceit," but which charged that defendant, "[did] steal, take and carry away [property]," obviously described a stealing without the consent of the owner. Thus, the *Zammar* Court disallowed the defendant's challenge that the indictment was insufficient. *Zammar, supra* at 445–446.

*State v. Kesterson*, 403 S.W.2d 606 (Mo. 1966), involved an information which specifically charged a defendant with stealing by deceit but which failed to recite the misrepresentations the defendant made to her victim. The court held the information insufficient for it did not allege the nature of the deceit nor did it allege the misrepresentations upon which the victim relied. *State v. Londe*, 557 S.W.2d 6 (Mo.App.1977) draws a similar conclusion.

*State v. White*, 431 S.W.2d 182 (Mo.1968) dealt with an information which alleged

that defendant, "did embezzle, steal, take and carry away, *by deceit* [money] with the intent to convert the same to his own use and deprive the owner of the use thereof . . ." (Emphasis added.) The court concluded, logically, that the information did not sufficiently allege *a felonious stealing* without the owner's consent and was misleading in that it was, "an attempt to charge a stealing by deceit, although inadequately." *White, supra* at 185. Inadequate, presumably, because it failed to express the misrepresentation such a charge would require.

*State v. Newhart, supra,* reversed a defendant's conviction under this statute where the indictment merely alleged that defendant did, "unlawfully, and willfully, and feloniously steal, or use, or transfer [property] in a manner inconsistent with the rights of the owner . . . *while acting as a bailee thereof . . .,*" (Emphasis added.) supra at 67. The *Newhart* Court concluded that the information did not make it clear whether the property was obtained by defendant having made misrepresentations to the owner (by deceit) or whether he lawfully obtained possession of the property and later kept it without the owner's permission (without consent).

■ These cases leave this court with the distinct impression that an information is not to be deemed insufficient merely because it omitted the statutory language, "without consent of the owner," unless said omission results in the inability of a defendant to discern the nature of the charge. *Zammar, supra,* remains the case most nearly on point and we are constrained to adhere to its logic.

■ Inasmuch as the information now at issue described no misrepresentations (which would imply deceit), and referred to defendant having "appropriate[d] . . . *by taking,*" the only interpretation to which it is reasonably susceptible is that it described a stealing without the owner's consent. The evidence at trial comports with this conclusion as does analysis of the aforementioned cases. Research disclosed no case which held an information insufficient for having omitted the "without consent" lan-

guage, unless it otherwise misled or inadequately informed the defendant of the charge.

Defendant's first two points on appeal are so interrelated that our adverse decision on Point I leads inexorably to a denial of Point II. Further discussion on defendant's second point is, therefore, unnecessary.

■ We next examine defendant's contention that the evidence of his guilt was insufficient to warrant submission of his case to the jury. In our review, we are obliged to view the evidence in a light most favorable to the state and disregard all evidence or inferences to the contrary. *State v. Summers,* 506 S.W.2d 67, 69 (Mo. App.1974). However, where, as here, a conviction rests solely upon circumstantial evidence, the fact and circumstances must be entirely consistent with the hypothesis of defendant's guilt and exclude every reasonable hypothesis of his innocence. *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976). This is not to say that the circumstantial evidence must demonstrate an absolute impossibility of innocence. And, the mere existence of another hypothesis is not enough to wrest the case from the jury. *Franco, supra* at 534–535.

■ Under § 560.156, RSMo. 1969, the elements of felonious stealing are: (1) The taking of property from the owner or possessor in charge thereof, (2) of at least the value of $50.00, (3) with the intent to permanently deprive, and (4) without the consent of the owner. Defendant was charged with stealing either alone or knowingly and with common purpose together with Linda Henson.

Defendant and Linda Henson entered the Jewel Box Jewelry Store at closing time on July 31, 1978. Soon thereafter, defendant informed the manager of the store that he and Linda Henson was interested in wedding rings. The manager then directed them to the front of the ring case and produced a tray of less expensive rings which she placed on the counter. All six slots in the less expensive ring tray were filled either with rings or spacers designat-

ing that the rings from that particular space had been sold. Immediately before defendant and Linda Henson entered the store, the manager had inventoried this tray of rings and found all six slots filled. Linda Henson examined the less expensive tray of rings and tried a few sets on her finger, whereupon she expressed a desire to see the more expensive rings.

The manager then produced a tray of more expensive rings which she had removed from the safe and placed on the counter in front of Linda Henson. She (the manager) moved the less expensive ring tray in front of defendant and, because her attention was focused on the more expensive ring tray then being examined by Linda Henson, she was not certain of defendant's actions relative to the tray of less expensive rings at the time.

After Linda Henson had examined the more expensive rings, defendant announced that he would withdraw money the next day from the bank and return to buy one of the more expensive ring sets. At this point he began to exit the store. Linda Henson hesitated a moment at the counter, repeated what defendant had said and exited, also.

Immediately thereafter, the manager returned the more expensive ring tray to the safe and turned her attention to the less expensive ring tray. She noticed at once that one of its ring sets was missing. She called the other clerk who was in the back of the store, and ordered him to search the area while she went out front to see in what direction defendant and Linda Henson had gone. However, there was no one present on the street. It is interesting to note the immediacy of the couple's disappearance.

Early the next day, a police officer seized a ring from the finger of Linda Henson which was later identified as the ring stolen from the Jewel Box Jewelry Store. Linda Henson informed the police officer that she had received the ring from her first husband. The police officer had known Linda Henson for a period of two years, and to the best of his knowledge she was not married during that time.

We hold the foregoing facts sufficient to make a submissible case of stealing against the defendant.

Judgment affirmed.

DOWD, P. J., and REINHARD, J., concur.