**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Stephen STIGALL, Defendant-Appellant.**

**No. 13720.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 30, 1985.

Rehearing Denied Nov. 21, 1985.

---

Charles M. Shaw, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Presiding Judge.

Defendant Stephen Stigall was convicted of manufacturing marihuana in violation of § 195.020.1, RSMo Supp.1983. A jury assessed his punishment at imprisonment for a term of five years. The defendant appeals. His assignments of error, slightly paraphrased, are: (1) that the information was fatally defective in that it charged only "manufacturing" marihuana without particularizing the specific act with which the defendant was charged. This is error rendering the information fatally defective, defendant says, because the word "manufacture" as used in § 195.020 is a generic term in light of the extensive meaning given the verb by its definition in § 195.010(21); (2) that the trial court erroneously received several inculpatory statements as declarations against interest; (3) that the State failed to comply with the procedural rules of discovery, to his prejudice, and (4) that the State's Instructions No. 6 and 7 were erroneously defective and incomplete and failed to follow the statute. We affirm.

The sufficiency of the evidence is not directly questioned, but a recital of the facts in brief sketch will, perhaps, clarify the opinion. On September 2, 1983, acting upon the tip of an informant, several police officers detected what they believed to be marihuana plants growing in a garden behind the defendant's residence in Wright County. Later the same day a search warrant was issued by Honorable A.F. Turner, Judge of the Forty-Fourth Judicial Circuit. Thereafter a number of officers went to the defendant's residence to execute the warrant.

When they arrived at the place where defendant lived, the officers found marihuana growing in several places. Some of the plants were growing in a garden; others were found growing in a plantation enclosed by logs. There had been no rainfall in the area and the defendant's yard was extremely dry. Nevertheless, the ground around the marihuana plants was moist, some of the plants had been recently hoed, and some had been mulched.

In all, 865 marihuana plants were recovered from the defendant's property. It was estimated that this number of plants would yield between 1,500 and 2,000 pounds of marihuana with a "street value" of $1,200 to $1,400 per pound. An apparatus suitable for drying marihuana and a white sheet containing processed marihuana were found in the defendant's house. The evidence abundantly supports the judgment of conviction. If, as the defendant

suggests, the exception excluding preparation or compounding a controlled substance "by an individual for his own use," created by § 195.010(21), applies to the manufacture of marihuana, then production in the quantity involved here permits the inference that the marihuana was grown and processed for sale or distribution, not for the defendant's personal use. *United States v. Scales,* 464 F.2d 371 (6th Cir. 1972); *Miller v. State,* 155 Ga.App. 399, 270 S.E.2d 822 (1980); *State v. Parsons,* 213 Neb. 347, 328 N.W.2d 795 (1983).

■ The defendant's assignment of error attacking the information is verbose but the substance of the point is clear. Defendant argues that the word "manufacture" as used in § 195.020.1 is a "generic" term because the word "manufacture" by statutory definition includes "... the production, preparation, propagation, compounding or processing ... of a controlled substance ...," § 195.010(21), and because by statute, "production" "includes the manufacture, planting, cultivation, growing, or harvesting ... of a controlled substance ...." Section 195.010(30). Able and experienced counsel cites *State v. Kesterson,* 403 S.W.2d 606 (Mo.1966) and *State v. Hasler,* 449 S.W.2d 881 (Mo.App.1969). Both those cases state and apply the rule that it is usually sufficient to aver the commission of a statutory offense in the language of the statute, but if the statute creating the offense uses generic terms in defining the offense and does not individuate the offense with particularity, then the information must recite the conduct constituting the crime with particularity sufficient to notify the accused of the charge against which he must defend himself. *State v. Kesterson* 403 S.W.2d at 611[3, 4].

■ We do not consider the cited cases apposite, but we do find a degree of merit in counsel's arguments. Ordinarily, when a statute provides that a crime may be committed in several different ways, or by differing means, the information must state the way in which the crime was committed. *State v. Charity,* 619 S.W.2d 366, 367 (Mo.App.1981); *State v. Newhart,* 503 S.W.2d 62, 67[2–5] (Mo.App.1973). Although the statute denouncing the manufacture of marihuana does not of itself disjunctively describe several acts which may result in the commission of a single offense, the definitions effectively do so by providing that a number of steps in the total process of "manufacture" may be punished as "manufacturing." The statute differs, however, from the statutes considered in *Charity* and in *Newhart* in that § 195.020.1 in terms prohibits the *manufacture* of marihuana without qualification.

The accusatory part of the information filed in this case reads as follows:

"... that on or about the 2nd day of September, 1983, in the County of Wright, State of Missouri, the Defendant knowingly manufactured marihuana, a controlled substance."

The State argues that the information tracks the language of MACH–CR 32.06.-12; therefore, under the provisions of Rule 23.01(e), the information should be deemed sufficient. However, in view of the language of MACH–CR 1.00.2 and the ruling in *State v. Dixon,* 655 S.W.2d 547, 558–59 (Mo.App.1983), we cannot say that the use of a pattern information insulates the charge from all possible objection. Further, as the State points out, in both *Lanphear v. State,* 574 S.W.2d 40 (Mo.App. 1978) and *State v. Halliburton,* 531 S.W.2d 554 (Mo.App.1975), this court held that an information charging the "sale" of marihuana in the language of § 195.020.1 complied with the requirements of present Rule 23.01(b), even though the word "sale" is defined by § 195.010(32) to include "barter, exchange, or gift, or offer therefor...." In *Lanphear,* 574 S.W.2d at 41, the court did suggest that the indictment might be subject to a bill of particulars, but that fact did not make the indictment so defective as to deprive the court of jurisdiction. We may also observe that at least one other

jurisdiction which has (or had) a controlled substances act very similar to ours has approved an information charging "manufacturing" with a mere reference to the statutory definition, which, of course, furnishes no more factual detail than the information filed in this case. *State ex rel. Bell v. County Court for Columbia County*, 82 Wis.2d 401, 263 N.W.2d 162 (1978). None of these observations reaches the defendant's claim of prejudice, which must be resolved on general principles.

An information or indictment is held sufficient if it performs three functions: (1) it must contain all the essential elements of the offense set out in the statute, (2) clearly apprise the defendant of the facts constituting the offense in order to enable him to meet the charge, and (3) be specific enough to bar further prosecution for the same offense. *United States v. Debrow*, 346 U.S. 374, 376, 74 S.Ct. 113, 114–15[1–2], 98 L.Ed. 92, 96 (1953); *State v. Garrett*, 627 S.W.2d 635, 637 (Mo.banc 1982), cert. denied 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *State v. Strickland*, 609 S.W.2d 392, 395[7] (Mo.banc 1981).

There is no doubt that, this information performs the first and third of these three essential functions. Section 195.020.1 in terms denounces "manufacture" of a controlled substance and by construction, requires knowledge of the nature and character of the controlled substance. *State v. Netzer*, 579 S.W.2d 170, 176[15] (Mo.App. 1979). These elements were specifically pleaded; this is not a case like *State v. Gilmore*, 650 S.W.2d 627 (Mo.banc 1983), wherein one of the essential elements was omitted. We are aware of the rule that an information which fails to allege the elements of the crime charged cannot be validated by a bill of particulars, *State v. Ladner*, 613 S.W.2d 951, 952[4] (Mo.App.1981), but this information did charge the essential elements of the crime. As far as double jeopardy is concerned, the present rule is that the entire record of the proceedings, and not the information alone, may be looked to if there is a claim of double jeopardy, and this defendant required no additional specificity to protect him from double jeopardy. 1 C. Wright, Federal Practice and Procedure, Criminal 2d § 125, p. 365 (1982).

■ The only question here is whether the information sufficiently performed the second function—to apprise the defendant of the facts constituting the offense so as to enable him to meet the charge. We suppose it might have been better to add an averment "by cultivating and processing the said controlled substance," or words of similar import, but even so, we find no prejudice to the defendant. If it be conceded that the information failed to correctly apprise the defendant of the facts constituting the offense so as' to enable him to meet the charge, the information nevertheless averred the essential elements of the offense. Therefore, the trial court acquired jurisdiction, because the information merely charged the defendant imperfectly. *State v. Redpath*, 668 S.W.2d 99, 101[1–3] (Mo.App.1984); *State v. Newhart*, 503 S.W.2d at 67[6]. Defendant made no motion to dismiss, either before or after the trial. Before the information was filed, defendant filed a combined motion to compel discovery, request for disclosure and a motion for a bill of particulars. Thereafter on October 31, 1983, the information was filed. The State then voluntarily furnished the defendant with the names and addresses of the witnesses endorsed on the information, the name of the expert who would identify the manufactured marihuana as such, and a copy of a written report—made by a member of the State Highway Patrol—which contained defendant's admission to growing marihuana. The State also offered to make photographs of the growing marihuana and the manufactured marihuana available to the defendant. This information was furnished on November 4, 1983. Additional information was later furnished by the State, but our examination of the record convinces us that by

November 4, 1983, defendant had been voluntarily furnished with all the information he needed to prepare his defense and meet the State's proof. The cause was not tried until February 1, 1984. The rule of harmless error applies to nonprejudicial defects in indictments and informations, *Smith v. United States*, 360 U.S. 1, 9, 79 S.Ct. 991, 996–97, 3 L.Ed.2d 1041, 1047–48 (1959); Note, Indictment Sufficiency, 70 Col.L.Rev. 876, 878, 883–84 (1970), and lack of particularity in the information filed in this case was harmless error within the meaning of Rule 29.12(a). The point is without merit.

The defendant's points II and III are that certain inculpatory statements made by the defendant were improperly received in evidence. The trial court allowed the State to adduce evidence that after defendant was effectively under arrest and had been given a *Miranda* warning, he addressed Trooper James Stuart and "asked why [the officers] were arresting his wife because she was not involved in the growing of the marijuana. He stated that he had grew [sic] it all on his own and that she had no connection with it." Counsel for the defendant moved a mistrial, which was denied.

At a pretrial suppression hearing, Trooper Stuart testified that the defendant was given a standard *Miranda* warning. However, Trooper Stuart could not remember whether he or Deputy Sheriff Parker read the warning. The inculpatory statement was made by the defendant after he was given the *Miranda* warning. Counsel now asserts that reception of the statement quoted violated defendant's Fifth and Sixth Amendment rights because Stuart was not sure who gave the warning and because the admission was the product of improper custodial interrogation.

In our view, it is not particularly important to identify the particular person who gave the *Miranda* warning, as long as it was given, and the record affirmatively shows that it was. We do not read the record as involving interrogation of any kind. The defendant had been taken in custody and had been given a *Miranda* warning; after he had been taken in custody, defendant asked why his wife had been arrested. Trooper Stuart told the defendant she had been arrested at the request of the Sheriff of Wright County. Defendant thereupon volunteered the statement. Thereafter, Trooper Stuart "started asking him some questions," but no product of that interrogation was offered in evidence.

We believe, as the trial court found, that the statement was voluntary and made after defendant had been advised of his *Miranda* rights. *State v. Olds*, 569 S.W.2d 745 (Mo.banc 1978), put the controlling principles thus:

"The statement appears to have been made quite voluntarily after defendant had been warned of his right to remain silent and was not in response to any interrogation. By volunteering, defendant waived his right (as to this statement) to remain silent under the fifth amendment of the United States Constitution and art. I, § 19 of the Missouri Constitution, and no violation of *Miranda* occurred...."

*Id.* at 747. Of course, the court went on to state that if a defendant asserts his right to remain silent and indicates he wants to obtain counsel, then any questioning must end until such time as the defendant voluntarily changes his mind or counsel is present. *Id.* at 752. In this case, there is no evidence whatever that the defendant at any time invoked his right to remain silent or indicated in any manner that he wanted counsel to be present. It is established beyond cavil that *Miranda* rights may be implicitly waived. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *State v. Phillips*, 563 S.W.2d 47, 52–54 (Mo.banc 1978), cert denied, 443 U.S. 904, 99 S.Ct. 3096, 61 L.Ed.2d 872 (1979); *State v. Pugh*, 600 S.W.2d 114, 117 (Mo.App.1980). There was no error in receiving this inculpatory statement, and contrary to counsel's argument, Trooper Stuart's testimony was not hear-

say. " 'Statements, declarations, and admissions by [an] accused from which an inference of guilt may be drawn are admissible in evidence against him. Such evidence is admissible as an exception to the hearsay rule, without regard to whether or not it constitutes a part of the res gestae.' " *State v. Spica,* 389 S.W.2d 35, 46[17] (Mo.1965), cert. denied 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); see also *State v. Thresher,* 350 S.W.2d 1, 9[18] (Mo.1961); *State v. Sinovich,* 329 Mo. 909, 917, 46 S.W.2d 877, 881[15] (Mo.1932). The point is without merit.

 A further objection is that the trial court erroneously permitted another and different witness to testify that in the witness' presence, defendant said "something to the effect that he would like for the news media to take the pictures of the big plants and not the little ones." The only understandable contention concerning the admission of this evidence is that the statement admitted was conclusionary. The statement was made in connection with television coverage of the execution of the search warrant and defendant's arrest, to which we shall refer shortly. A witness' testimony is not to be excluded merely because the witness cannot speak with such confidence as to exclude all doubt from his mind. The qualification "his statement was something to the effect" is no more conditional than the qualification "if I am not mistaken" and does not totally destroy the probative effect of the witness' testimony although it affects its weight. *State v. Brinkley,* 354 Mo. 337, 356, 189 S.W.2d 314, 323[20, 21] (1945); see *Leathers v. Sikeston Coca-Cola Bottling Company,* 286 S.W.2d 393, 396–97[2–4] (Mo. App.1956); *Ray v. Hooper,* 204 S.W. 30, 31–32 (Mo.App.1918). As the State carefully notes, the witness was not allowed to testify to what he thought the witness meant; he testified only to his recollection of the substance of the defendant's statement. This point is without merit.

Counsel for defendant objects strenuously to the trial court's allowing two troopers and a TV cameraman to testify, and to the court's action in allowing the cameraman's video tape to be shown to the jury. The defendant's objection is based on what he asserts is "mockery of the Supreme Court Rules." Counsel refers to an alleged violation of Rule 25, which deals with disclosure and depositions in criminal trials. The record shows that the defendant, on October 26, 1983, filed a request for discovery in the Circuit Court of Wright County, substantially in the language of present Rule 25.03. On November 4, the State voluntarily disclosed: 1) the names of all witnesses endorsed on the information, but the names of Trooper J. M. Stuart and Sergeant G. M. Zorsch were not listed; 2) in response to a request for examination of books, documents and records as required by Rule 25.03(c), the State added: "Photographs and marihuana will be shown to Defendant's counsel upon request if prior arrangements [are] made." We note also that counsel had moved the court for a change of venue on October 20, 1983, upon the ground of pretrial publicity, including coverage by Harte-Hanks Communications' Springfield television station. The change of venue was granted.

On January 18, 1984, the State filed a supplement to its answer to the request for disclosure, listing Sergeant Zorsch and Trooper Stuart, and enclosing statements they had obtained at the time of the arrest. Further, on January 19, 1984, the State disclosed the names of two persons from the Harte-Hanks television station and indicated it would produce and offer in evidence "[v]ideo film showing officers pulling marihuana plants at the Defendant's farm [and] processed marihuana." On January 24, the State gave notice that it had subpoenaed a Harte-Hanks cameraman—the cameraman who had shot the television footage made shortly after the "raid" on defendant's premises. On January 25, the defendant supplemented his answer to the State's request for disclosure by listing seven (7) witnesses he intended to call, and included "any of the witnesses now or here-after [sic] endorsed by the State."

The defendant moved the court to penalize the State, but not as vigorously as he now contends. The court addressed counsel asking the precise nature of his objection. Counsel responded:

"No, my objection is that—primarily to the [TV cameraman]. We know what Stuart said—we're not surprised by that. Zorsch actually isn't too important as far as we're concerned. We object for the record, but I think reasonable men can disagree as to whether or not it's proper to endorse them. I vehemently object to [the cameraman]—whatever his name is."

The court allowed counsel to view the videotape and allowed the State to endorse witnesses Zorsch and Stuart. Counsel again objected to endorsement of the TV cameraman, and moved for a mistrial.

■ This court has read the testimony of the TV cameraman and the videotape has been viewed here. We find the testimony given by the cameraman to be brief and generally unexceptionable. When the criminal discovery rules were first adopted, our courts took the view that the basic question to be addressed when failure to comply was charged was whether or not the failure to comply resulted in fundamental unfairness to the defendant. See, e.g., *State v. Holloway*, 597 S.W.2d 218, 221 (Mo.App. 1980). Both the testimony and the contents of the tape are remarkably circumspect; the tape contains a short interview between the cameraman and an investigating officer; defendant's name is not mentioned—only that three suspects are in custody—and the number of plants found is stated. It is not at all clear that the tape was "within the possession or control" of the State until a few days before the trial, and in any event, the question whether to impose a particular sanction, or any sanction at all, lies initially in the sound discretion of the trial court, and an appellate court will find an abuse of discretion only when admission of the evidence results in fundamental unfairness to the defendant.

*State v. Royal,* 610 S.W.2d 946, 951 (Mo. banc 1981). The notion of "fundamental unfairness" in turn is to be measured by whether the evidence or the discovery thereof would have affected the result of the trial. *Id.* at 951; *State v. Couch,* 569 S.W.2d 789, 791 (Mo.App.1978). The testimony of the cameraman and the videotape merely corroborated the testimony of the State's other witnesses and in fact the trial court did impose a·sanction by permitting counsel to view the tape before trial. See *Couch,* 569 S.W.2d at 791. There was no prejudice to the defendant and consequently no abuse of discretion.

The defendant's final point is an assignment of instructional error. The defendant criticizes Instructions No. 6 and 7. Instruction No. 7 directed a verdict upon a finding that the defendant knowingly manufactured marihuana. Instruction No. 6 defines the terms used in Instructions No. 7 and 8. The defendant's contention is obtuse, but as stated in his brief is that:

"Manufacturing implies preparation of commodities for sale to other persons. It carries a maximum sentence of twenty-five years. Personal possession of marijuana carries a maximum sentence of five years. Evidence most favorable to State showed a Vietnam veteran in possession of more than thirty-five grams for his own usage as opposed to manufacturing."

Defendant's arguments will be briefly considered, even though in substance they are much the same arguments made in connection with the information and that indirectly made in connection with submissibility. We shall not set out the instructions verbatim.

■ Instruction No. 7 submitted defendant's guilt of manufacturing marihuana upon a finding that he: a) manufactured marihuana, and b) that defendant was aware of the character of the substance and knew that he manufactured it. The only objection made to this instruction is

that the jury was not given adequate instruction because the word "manufacture" is generic and the definition of the word "manufacture" is incomplete. Instruction No. 6 defined the word "manufacture" as follows:

> "*Manufacture* means the production, preparation, propagation, compounding or processing of a controlled substance, either directly or by extraction from substances of natural origin."

Defendant complains that this instruction is not complete because it does not literally track the language of § 195.010(21). This complaint is controlled by what was said or implied in such cases as *State v. Goodman,* 490 S.W.2d 86, 87 (Mo.1973) and *State v. Hurvey,* 544 S.W.2d 593, 594–95 (Mo.App. 1976): the sense of these cases is that if an all-encompassing definition would only add confusion, then it should not be given. In the final analysis, it was the duty of the court to "instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving the verdict...." Section 546.-070(4). The instructions given performed that function.

The trial court also instructed the jury on the offense of possession of more than 35 grams of marihuana, apparently on the theory that the definition of the term "manufacture" exempts preparation or compounding of marihuana "for his own use." Defendant argues, implicitly, that this is the only instruction which should have been given. What we have said about sufficiency disposes of defendant's assignment of error in this respect.

Once again calling attention to the provision of Rule 29.12(a)—"[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded"—we affirm the judgment of conviction.

PREWITT, C.J., and MAUS and CROW, JJ., concur.