O. E. HALEY, Respondent, v. MARY C. BRANHAM and MARTIN L. BRANHAM, Appellants.

Kansas City Court of Appeals, October 4, 1915.

1. **BILLS AND NOTES: Mortgages and Deeds of Trust: Primary Fund for Payment of Debt.** Defendants excuted their note and secured it by a mortgage on an undivided interest in land. Afterwards this land was partitioned and sold without making the holder of the note a party to the suit, and defendants obtained the full value of their interest sold as unincumbered land. Plaintiff bought the note and took an assignment thereof but in doing so had no connection with the purchaser of the land. *Held*, that the release of the mortgage did not release defendants on the note. The original mortgagee was not bound to look to the land for his debt nor was his assignee required to do so.

2. ———: ———: **Equity of Redemption.** If the equity of redemption be sold on execution, the purchaser cannot either legally or equitably claim that the mortgagor shall pay off the mortgage, and, as between these two, the land remains a primary fund out of which the mortgage should be paid. But this is not true as to the mortgagee unless there has been some agreement on his part or something done by him which binds him to look to the land as a primary fund.

Appeal from Jackson Circuit Court.—*Hon. D. E. Bird, Judge.*

AFFIRMED.

*J. Allen Prewitt* for appellants.

*Chas. F. Trinkle, W. B. Cline* and *W. B. Dickinson* for respondent.

TRIMBLE, J.—This is a suit on a promissory note dated December 16, 1910, due one year after date, executed by the defendants to Chris Sebolt or order and by him assigned, after maturity and without recourse, to the plaintiff O. E. Haley. The execution of the note was admitted but the answer set up that the note was secured by a duly recorded mortgage upon the defendant Mary C. Branham's undivided one-fourth interest in certain Kansas land; that said land was sold in partition subject to said mortgage and purchased by one Hugh M. Tevis while said mortgage was existing and in force thereon; that said land thereby became primarily liable for the payment of said note; that thereafter and while said land was primarily liable, the plaintiff obtained the note from Sebolt, the payee, and released the mortgage, and, since he has released the property which is primarily liable for the payment of the note, he cannot now proceed against defendants. There is no allegation of payment nor that Tevis, the purchaser of the land at the partition sale, assumed the payment of the note, nor that it was sold expressly subject to the mortgage, nor that defendants did not receive full value for their land.

The defendants and Sebolt, the payee of the note, lived in Independence, Missouri. Mary C. Branham obtained title to her one-fourth interest in said land by inheritance as one of the four heirs of her father. After the mortgage securing the note in question had been duly recorded, and after the note had matured, it seems that one of the other heirs brought suit for partition of the land and obtained service upon defendants by publication. No mention of the mortgage was made in this suit nor was Sebolt, the then owner and holder of the note and mortgage, made a party. On the 31st day of August, 1912, judgment of partition was rendered and it was ordered that, if partition could not be made in kind, the land should be appraised and sold. The judgment also canceled a contract between

Mary C. Branham and the plaintiff in the partition suit for the sale to the latter of her one-fourth interest, upon the ground that Mary C. Branham had not complied with her contract as to furnishing an abstract showing good title, and the plaintiff in that suit was therefore entitled to rescind the contract and to have a lien on her interest for the amount paid thereon which lien the judgment established. Defendants say they had no actual knowledge of the institution of this suit, nor did they know of the rendition of said partition judgment nor of the cancellation of said contract. And they further insist that the suit was fraudulently brought without their knowledge so as to afford the plaintiff in that suit an opportunity to get out of the contract to purchase Mary C. Branham's interest. But we think this contention can have little or no weight now, because, after the judgment was rendered but before any steps were taken thereunder, the defendants herein found out about the judgment and the cancellation of the contract and filed a motion in the Kansas court, which rendered the judgment, praying that said judgment be set aside. And before said motion was acted upon, the parties to that suit, including Mary C. Branham and her husband, the defendants herein, entered into a stipulation whereby it was agreed that said motion should be withdrawn, that the contract of sale should be held void and that the judgment rendered should, with a slight modification, stand and the property be sold as directed. So that the question whether the judgment for cancellation and partition was improperly sought and obtained is out of the case, since defendants stipulated that the judgment, slightly modified, should stand.

Defendants, at the time of the stipulation, said nothing about the mortgage on the land and no mention whatever was made of it in the partition proceedings. Thereafter the land was appraised at $4790, but none of the parties interested in said land elected to

take the land at its appraised value as they had a right to do under the law, so that the sheriff proceeded to sell it according to law as directed in said order. It brought $4050 that being the highest and best bid. After the costs were paid each heir got $942 for the land. That is, the defendants herein got as much for their mortgaged interest as the other heirs got for their respective shares.

After Tevis had bought the land and paid the above amount therefor, plaintiff herein, O. E. Haley, went to Sebolt at Independence and bought the note and took an assignment of it and the mortgage. This was done on July 26, 1913. On October 4, 1913, he released the mortgage and thereafter brought this suit on the note.

Defendants' theory that they should not be required to pay said note is that inasmuch as the purchaser at an execution or partition sale buys only the interest of the parties to the suit and takes the land *caveat emptor,* therefore, Tevis, the purchaser at the partition sale, bought the land subject to the mortgage on defendants' interest, and should pay the mortgage too. And hence the land became primarily liable for defendants' debt and, since the property primarily liable has been released, plaintiff cannot look to defendants personally.

It is true that if the equity of redemption be sold on execution, the *purchaser* cannot either legally or equitably claim that the *mortgagor* shall pay off the mortgage, and, *as between these two,* the land remains a primary fund out of which the mortgage should be paid. [Walker v. Goodsill, 54 Mo. App. 631, l. c. 635; 1 Jones on Mortgages, sec. 736; Parkey v. Veatch, 68 Mo. App. 67, l. c. 74.] This principle undoubtedly applies as between the seller and the purchaser of the mortgaged premises. But this is not so as to the mortgagee unless there has been some agreement upon his part or something done by him which binds him to look

to the land as a primary fund. As said in 27 Cyc. 1352, "As between the grantor of the mortgaged premises and the grantee who assumed the mortgage, personal liability for the mortgage debt is transferred from the former to the latter. But this is not so as to the mortgagee; the assumption of the mortgage does not deprive him of any rights or remedies he possessed against the mortgagor, or relieve the latter from liability for the debt secured, unless the mortgagee has expressly agreed to release him and to accept the purchaser as his debtor in place of the mortgagor." [See, also, First Nat'l Bank v. Gardner, 57 Mo. App. 268.] Section 10161, Revised Statutes 1909 (being section 192 of the Negotiable Instruments Act) provides that "the person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable." In 27 Cyc. 1335, it is said, "By selling the mortgaged premises, the mortgagor does not relieve himself from his personal or primary liability on the note or bond evidencing the mortgage debt. This can only be done by the mortgagee's voluntary acceptance of the purchaser as his debtor, in the place of the mortgagor, and releasing the latter, failing which he retains his claim against the mortgagor as well as his lien on the land, or a claim upon the proceeds of the sale. The owner of an unrecorded mortgage may maintain an action for damages against the mortgagor who sold the mortgaged premises to one who took for value and without knowledge of the mortgage, where the mortgagor refuses to pay the debt secured by the mortgage out of the proceeds of the sale." The mortgage in question was on land in Kansas and in Anthony Investment Co. v. Law, 62 Kan. 193, l. c. 196, it is said, "The holder of a note may at his option ignore the security and bring his action on the note alone, and the fact that the mortgagor has

192MA9

sold the mortgaged property to another, subject to the mortgage debt, does not affect the right of the holder to pursue the personal remedy. [Lichty v. McMartin, 11 Kan. 565; Jones, Mort., sec. 1220.] The fact that the purchaser of the property assumed the mortgage debt does not affect the personal liability of the makers of the notes, unless there has been an agreement to release them; and no release is claimed." [See, also, Rossiter v. Merriam, 80 Kan. 739.]

Now, Haley, the plaintiff and assignee of the note, stands in the shoes of Sebolt, and succeeds to all the rights of the latter. If Sebolt could sue defendants personally on the note and ignore the mortgage it is not seen why his assignee for value could not do so. Such assignee, unlike Tevis, the purchaser of the land, has done nothing obligating himself in any way. Of course, if Haley was merely acting for Tevis, doubtless he could not do that which Tevis could not do, but there is no evidence whatever that there is any connection or relation between them.

Speaking argumentatively only, we may say that even if the act of Tevis in buying the land subject to the mortgage (although he did not actually know of it and nothing was said about it), did create, in *law* as distinguished from *equity,* the right in defendants as to Tevis to have the land held primarily liable for the debt, still no such *legal* right would be thereby created *as to Haley,* the plaintiff. If any such right could arise as to him it would be by virtue of some equity growing out of the facts. But when these are examined we find that there are no equities requiring Haley to treat the land as primarily liable, nor would defendants, by paying off the note, be entitled to recourse on the land to reimburse themselves. The land was partitioned and sold as if it were unincumbered. Defendants did not sell their land and receive in payment therefor a sum diminished by the amount of the mortgage. They got their full share of all that it would

bring at public auction when the full fee simple title was being transferred as the judgment recites, and they received the same share as did the other heirs. If now, they can escape the payment of this note, they will get $500 more than did any of the others. It would seem that if, *in this case,* it is to be *conclusively* presumed that the purchaser at the partition sale, in bidding $4050 for the land, really paid that amount plus the mortgage for it, then the land sold for $4550 and the other heirs would be entitled to participate and share in the latter sum rather than in the former. But defendants are saying, in effect, that their share sold for $500 more than the others though it was but an undivided interest, and the judgment purported to convey the fee simple title and defendants joined in having the land thus sold without saying a word about the mortgage on their interest. Perhaps, if defendants had sold their land for the amount of their bid plus the mortgage, they could require the purchaser to pay the debt, and if, under such circumstances, Haley bought the note with notice of the fact that the amount they received for the land was reduced by the mortgage, then the equity of those circumstances might require Haley to retain the mortgage so that they could enforce that equitable right. Otherwise, defendants would be in the position of having sold their land for $500 less than was intended, and if they were then required to pay the note and could not hold the land primarily liable therefor, they would lose that much. But that is not the case here. They joined in having the land sold as unincumbered and said nothing about the mortgage. They got their full share of all that it would bring at public auction after they had had an opportunity to take it at its appraised value and had declined that opportunity. Hence they have lost nothing. Consequently, there is nothing in the facts creating equitable rights in defendants, as between themselves and this plaintiff who is a third party and has nothing to do

with the purchaser of the land, requiring him to lose the note because he chose to look to them personally and not to the land for the payment thereof. We have been cited to no case applying the equitable principle of a primary fund for the payment of a debt owed by the mortgagor to the mortgagee or his assignee, having no connection with the purchaser of the mortgaged land, when the maker of the note was party to a judgment selling the land as unincumbered, and had received his full share of the proceeds of the land thus sold. In fact, in a great many of the cases, even where the question was between the seller and the purchaser of the mortgaged premises, the sale of the property was expressly made subject to the mortgage and the amount of the indebtedness secured was included in and formed a part of the consideration of the sale. [Laudan v. Cottrill, 159 Mo. 308, l. c. 320; 1 Jones on Mortgages, p. 747.] We do not mean to hold that this is necessary in all cases between seller and purchaser of mortgaged property. But certainly, where the case is between the mortgagor and a third party and the former has sold his property as unincumbered and has received full value therefor with no reference made to the mortgage and the purchaser has bought thinking he is getting the unincumbered title, there is nothing in equity giving the one who owes the debt and who will lose nothing when he pays it, the right to insist that such third party shall look primarily to the land for the payment of his debt.

Objection is made to the petition as a pleading but we think the objection is without merit. The only attack made on the petition was by way of an objection to the introduction of the evidence. The very defense pleaded in the answer not only admits the execution of the note set forth and described in plaintiff's pleading but also presupposes and is based upon the existence and validity of the very facts defendants say the petition fails to state. A reversal and remanding of

the judgment upon the technical point raised, even if it were valid, could have no other effect than merely to require a new trial on account of a barren technicality and which new trial would only lead to the same result now reached. We should not reverse for errors which do not "materially affect the merits of the action." [Sec. 2082, R. S. Mo. 1909.]

The judgment is, therefore, affirmed. All concur.