STATE of Missouri, Respondent,

v.

John W. NEWHART, Appellant.

No. KCD 27677.

Missouri Court of Appeals,
Kansas City District.

May 3, 1976.

Motion for Rehearing and/or Transfer
Denied July 6, 1976.

Application to Transfer Denied
Sept. 13, 1976.

Gary Eldredge, Lee M. Nation, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Neil MacFarlane, Philip M. Koppe, Asst. Attys. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

The appellant (defendant) was convicted of stealing more than Fifty Dollars, Section 560.156 RSMo 1969, and sentenced to five years imprisonment and placed on probation. He appeals from this judgment.

This is the second direct appeal of this matter to this court. A previous conviction of the defendant on the same charge was reversed and remanded because of a defective information and prejudicial error in the state's verdict directing instruction. *State v. Newhart*, 503 S.W.2d 62 (Mo.App.1973). Upon remand, the state filed an amended information and the case was retried with the result above noted.

■ The sufficiency of the evidence is once again challenged on this appeal as insufficient to support a finding of guilt, and this court is, therefore, held to the historical and well-defined limits as to the scope of permissible review. The evidence and reasonable inferences to be drawn therefrom must be considered in a light most favorable to the state, and all contrary evidence or inferences to be drawn therefrom must be disregarded. *State v. Chase*, 444 S.W.2d 398, 401[1] (Mo. banc 1969); *State v. McClinton*, 418 S.W.2d 55, 57[2] (Mo. banc 1967); *State v. Jackson*, 500 S.W.2d 306, 309[3] (Mo.App.1973); *State v. Davis*, 515 S.W.2d 773, 776[3] (Mo.App. 1974).

The evidence in both trials was substantially the same in all significant details and the facts essential to the disposition of this appeal and within the confines of the rule above stated are as follows:

On October 27, 1970, Donald L. Tittsworth and his wife, Virginia L. Tittsworth, as sellers, entered into a real estate contract with A. E. Richardson, as buyer, for the sale of their 79-acre farm near Savannah, Missouri. This contract was prepared by the Tittsworths' lawyer, the defendant; was executed in his office at Savannah, Missouri and provided for a purchase price of $16,000.00. At the time of the execution of this agreement, Mr. Richardson delivered to the defendant his personal check for $1600.00, made payable to the defendant, as "earnest money" on the contract.

Thereafter, Richardson's attorney examined the abstract of title and rendered a title opinion, and on December 30, 1970, Richardson delivered his check to the defendant in the amount of $14,400.00, representing the balance of the purchase price under the contract, and received a warranty deed to the property executed by the Tittsworths. The check was made payable to the Tittsworths.

On December 31, 1970, the Tittsworths went to the defendant's law office and endorsed the Richardson check for $14,400.00 in blank and received from the defendant his check for $7,975.40 payable to them and the First Community State Bank of Savannah (hereafter Community), which represented payment of their equity in the farm above the unpaid balance of a note secured by a deed of trust on the farm held by the Veterans Administration (hereafter VA). It was the oral agreement and understanding of the Tittsworths and the defendant that he would utilize the balance of the Richardson check to retire the outstanding VA loan "right away". This was also Richardson's understanding of how the matter would be handled with reference to the encumbrance on the farm.

When the defendant delivered his check to his clients on December 31, 1970, he asked them not to present it to Community for about an hour, in order to give him time

to deposit the Richardson check in his account. They complied with this request and later that day deposited the defendant's check in Community to their own account. The defendant's check was drawn upon and the Richardson check deposited in the defendant's "Special" or "Escrow" account at Community. The record discloses that on the date of this transaction, the unpaid balance of the VA loan was slightly in excess of $8,000.00.

The demand ledger records of Community on the escrow account of the defendant disclosed the deposit therein of the $14,-400.00 Richardson check on December 31, 1970, and that on the same day, checks were charged against the account in the amounts of $3600.00 (which had been presented on December 30, 1970, but not charged against the account because the then balance was insufficient to cover it), $900.00, $7,975.00 (obviously the Tittsworths' check), $1000.00 and $450.00, and that the balance of the account at the close of business on December 31, 1970 was $631.31. On September 13, 1971, the account showed a zero balance and was "closed out". From the close of business December 31, 1970 to and including September 13, 1971, except on January 5, 1971, as hereafter discussed, there was never a sufficient balance in the account to cover a check for the amount necessary to retire the VA loan on the farm.

The defendant testified that because of an outstanding judgment against him, and to prevent successful garnishment, he maintained a minimal balance in the account. He stated that he had an arrangement with Community that checks written by him on this account in excess of the then balance would be treated as sight drafts by Community; he would be notified, and would pick up such checks over the counter with cash, which he kept in his office safe for this purpose. He was corroborated as to the so-called "sight draft" arrangement by an employee of Community and he stated that he intended to handle the payment to the VA in this manner. It is interesting to note that the defendant put forth another theory of defense. He pointed out that at one

time during the period here involved, the balance of the special or escrow account, into which the Richardson funds had been deposited, combined with a balance in another account of his law firm (not directly involved here) would have been sufficient to cover the checks which he claimed he had written in payment of the VA loan. While the evidence did show at one time the combined balances in both accounts slightly exceeded $8,000.00, this theory of defense would seem to be at war with his asserted fear of garnishment arising from the outstanding judgment and the practice of accumulating cash in his office safe.

In the latter part of January, 1971, the Tittsworths received a notice from VA of payment due on the loan, which they disregarded, thinking that the loan had in fact been paid by the defendant. They received a second notice in February and contacted the defendant. Notices were received in March and April, and the Tittsworths went to see the defendant at his office and he assured them he had sent a check to VA in payment of the loan. However, they continued receiving notices and were contacted by VA representatives, and in August, 1971, the VA wrote them threatening foreclosure of the deed of trust.

Mr. Richardson, the purchaser of the farm, testified that he first became aware that the VA loan had not been paid in April, 1971 and he thereupon contacted the defendant, who said he would "take care of it". In May, he again received a notice of nonpayment from the VA, again contacted the defendant, and was informed that a check in payment had been sent to VA but had been lost in the mails. Richardson testified that he received another notice from VA in August, advising him of its intention to foreclose; that on September 21, 1971, he received a check from the defendant for the amount owing on the loan; that he mailed this check to the VA by certified mail, return receipt requested; that he later received the return receipt showing delivery to VA; that later, he was contacted by VA and was advised that the check had not been received; and, that the VA official

demanded hand delivery of a check in payment of the loan at its Kansas City office.

The evidence disclosed that thereafter in October, 1971, the defendant did hand deliver a cashier's check drawn on a Kansas City bank to the VA office in satisfaction of the debt on the day before foreclosure notice was to be published.

The records of Community showed two stop payment orders on the defendant's special account. The first of these was dated September 21, 1971, and stopped payment on a check dated February 23, 1971, payable to VA in the amount of $18,065.96. The other was dated October 27, 1971, and stopped payment on a check (date not shown) payable to VA in the amount of $8,338.18. The reason stated in both of these stop payment orders was that the checks were "lost". It is noted that neither of the checks was ever presented to Community for payment, and that as of the dates of the stop payment orders, the defendant's special account had a zero balance.

Further, both Mr. and Mrs. Tittsworth directly and positively testified that they had never authorized the defendant to do nor consented to his doing anything with the balance of the purchase price of their farm other than pay their VA note and satisfy the encumbrance on the property. Mrs. Tittsworth stated it was her understanding that the defendant would do this "right away" after the sale was closed on December 31, 1970. Mr. Richardson testified that he did not authorize the defendant to use the money for anything other than the payment of the VA loan.

Further facts disclosed by the record will be hereafter noted as pertinent to specific points raised in this appeal.

On this appeal, the defendant urges three points or assignments of error. Although divided into several subsections, his first point deals with the sufficiency of the evidence to support his conviction. In support of his position, he states that the evidence was insufficient to show (A) that he stole property on or about January 5, 1971; (B) that the Tittsworths were the owners of the

property; and (C) that he possessed an intent to permanently deprive the owners of their property.

■ As to defendant's Point IA, this court in the previous appeal, based upon the same evidence and confronted with the same assignment of insufficiency of proof, correctly held, *State v. Newhart*, 503 S.W.2d 62, 70[15] (Mo.App.1973), that:

"* * * it suffices to say the jury could find that defendant stole the property in question by retaining possession of and using it without the consent of the owners."

and that same conclusion must be reached upon this record.

But here, the defendant's emphasis is lodged on a failure of proof that this alleged crime occurred "on or about January 5, 1971". The prosecuting attorney argued at the trial that this date was selected because if a check had been written by the defendant to pay the VA loan on December 31, 1970, it would have cleared and been presented to Community for payment by January 5, 1971. But a supportive and more cogent reason for the selection of that date by the state appears. In addition to the evidence above noted, the balance in the defendant's special account at the close of business December 31, 1970 was $631.31. The bank records further show that on January 5, 1971, there was a deposit made to the account in the amount of $8,000.00, the source of which was not shown nor explained by the defendant, but which could conceivably have been Tittsworths' money or funds to replace Tittsworths' money. Such deposit would possibly have made the balance sufficient to pay the outstanding VA loan. However, four checks were drawn against the account on that day, depleting such deposit.

As above noted, never thereafter, up until the time that the account was closed on September 13, 1971, was there a sufficient balance to pay the loan and no check to VA in the amount of the loan was ever presented to Community for payment. It is clear that while the Tittsworths' loan funds were

deposited to the special account on December 31, 1970, that after that date such funds were removed therefrom by the act of the defendant.

■ The state contends (and defendant concedes in his reply brief) that the term "on or about" a date means "approximately" that date. 29A, Words and Phrases, pp. 263–266. The date or time is not "of the essence" of this offense. It is of no real significance with reference to the crime of which the defendant stands convicted, whether he committed the offense on December 31, 1970, January 5, 1971, or on another date. Rule 24.11, Rules of Criminal Procedure; *State v. Summers*, 489 S.W.2d 225 (Mo.App.1972); *State v. Turley*, 452 S.W.2d 65 (Mo.1970).

■ Under his Point IC, defendant urges that the proof did not establish an intent to "permanently deprive" the Tittsworths of the funds which were to be used to retire the VA loan and that such intent is an essential element of the offense of stealing under Section 560.156 RSMo 1969. It would seem that defendant's position is that the most that the evidence shows is an intent to "temporarily", as distinguished from "permanently", deprive the Tittsworths of the funds. He boldly asserts that the "only evidence" of such intent is that the money was not paid to VA until October of 1971. But he overlooks the substantial evidence that he did not transmit the funds to VA until he had been approached with inquiries on several occasions by the Tittsworths and Richardson; that he had avoided direct communication with VA officials by ignoring their telephone calls for a period of about two weeks; that the loan was paid by him only when foreclosure was imminent and he was threatened with prosecution; and, that, in fact, the payment to VA was not made for almost ten months after the funds to pay the loan came into his hands. Intent to permanently deprive the owner of the funds so as to comport with the stealing statute is not to be gauged by the length of time the owners are so deprived nor rendered nugatory because the deprivation was, for one reason or another, not, in fact,

permanent. As was said in *State v. Armstrong*, 445 S.W.2d 367, 368[2] (Mo.1969), an automobile theft case:

"The information charged and the verdict-directing instruction required a finding that the accused intended to *permanently deprive* the owner of the use of the automobile and to convert it to his own use. The evidence indicating that *appellant kept and used the automobile as his own for a period of two weeks was sufficient upon which to submit this question to the jury.*" (Emphasis supplied)

In *State v. Sturgell*, 530 S.W.2d 737, 738–739[1, 2] (Mo.App.1975), the defendant contended unsuccessfully that because a stolen automobile was shortly abandoned, there was no showing of intent to permanently deprive the owner thereof.

Defendant's Points IA and IC are ruled against him.

Under his Point IB, defendant assumes a position which is not supported by the facts or the law. He urges that the evidence established that Richardson, the buyer, and not the Tittsworths, was the owner of the funds involved. This conclusion stems from this specious reasoning, as contained in his brief:

"It is clear that the *only* recourse available to the Veterans Administration, had the note remained unpaid, would have been to proceed against the land which Mr. Richardson had purchased. * * * From the evidence presented at trial, *the Tittsworths completely dropped from the picture when appellant gave them the money in complete satisfaction of their equity interest* and *when Mr. Richardson assumed liability on the note.* * * *"
(Emphasis supplied)

On the contrary, the Tittsworths conveyed the property by general warranty deed, free and clear of any encumbrance; they were paid the full value therefor by Richardson; and Richardson did not assume the VA obligation.

■ It was, of course, the intention of all parties that the Tittsworths, through their attorney, the defendant, would use that

portion of the proceeds of the sale to pay VA the balance on the loan and free themselves from their obligation on the note and free the property from any encumbrance in accordance with their warranty. The position of the Tittsworths upon delivery of the deed to Richardson is thus stated in 59 C.J.S. Mortgages § 393, p. 554:

"By selling the mortgaged premises the mortgagor does not relieve himself from his personal or primary liability on the note or bond evidencing the mortgage debt, particularly where he has sold the property as unencumbered and has received full payment therefor * * *"

See also: *Haley v. Branham*, 192 Mo.App. 125, 180 S.W. 423 (1915).

The holder of the note (in this case, VA) secured by mortgage, may enforce this personal obligation irrespective of the security and without resort thereto. *Allen v. Dermott*, 80 Mo. 56, 59[2] (1883); *Southern Missouri Trust Company v. Crow*, 272 S.W. 1040, 1041[1] (Mo.App.1925); *Boydston v. Bank of Camden Point*, 141 S.W.2d 86, 88[3] (Mo.App.1940).

Even had Richardson assumed the mortgage, any action brought against him would be on his covenant of assumption and not on the note. *Hafford v. Smith*, 369 S.W.2d 290, 298[16] (Mo.App.1963).

By the above statements of the general principles of law applicable to the situation of the parties, it is not meant to infer that there would be any reason why the VA, upon default in the payment of the Tittsworth note, could not foreclose on the farm as security for the note, as, indeed, was contemplated. If this had been accomplished, the only recourse of Richardson would have been an action against the Tittsworths upon their warranty of free and unencumbered title. However, by paying them directly the full value of the property and accepting the warranty deed, he relinquished all legal dominion and ownership of the funds and they became the owners thereof within the meaning of the criminal statute here involved, Section 560.-156 RSMo 1969. Defendant's Point IB is ruled against him.

■ The defendant's second point is that the trial court erred in refusing to give his requested instruction on circumstantial evidence which was proffered in the form of MAI–CR 3.42. The "Notes on Use" accompanying this approved instruction contains the following:

"2. This instruction *may* be given even if there is some direct evidence of guilt, though it *need not be given at all unless the evidence is wholly circumstantial.*" (Emphasis supplied)

This note is in accord with a substantial body of decisional law. In *State v. Washington*, 364 S.W.2d 572, 576[12] (Mo.1963), the court said:

" * * * Where a case partially depends upon circumstantial evidence it is proper, *although not mandatory*, to instruct thereon. * * *" (Emphasis supplied)

In *State v. Hoskins*, 515 S.W.2d 502, 503[1] (Mo.1974), the court said:

"It is not *necessary* to give an instruction on circumstantial evidence *unless* that character of evidence *alone* is relied on for conviction. * * *" (Emphasis supplied)

In *State v. Cox*, 352 S.W.2d 665, 670[4] (Mo.1961), the court said:

" * * * *Error cannot be predicated* upon a failure to give an instruction on circumstantial evidence unless evidence of that character is solely relied upon for conviction. * * *" (Emphasis supplied)

See also: *State v. Davis*, 491 S.W.2d 549, 552[7] (Mo.1973); *State v. Collor*, 502 S.W.2d 258, 259–260[3, 4] (Mo.1973); *State v. Little*, 501 S.W.2d 562, 563[1] (Mo.App. 1973); *State v. Sheppard*, 515 S.W.2d 785, 787[2] (Mo.App.1974).

This court in the first appeal of this case very carefully analyzed the codification of the previously existing separate crimes of larceny, embezzlement and kindred offenses in 1955, and the present Section 560.156 RSMo 1969, dealing with the crime of stealing, of which this defendant was convicted. *State v. Newhart*, 503 S.W.2d 62, 66–67[1–

5] (Mo.App.1973). That analysis applies with equal verity on this appeal and no useful purpose would be served by repetition here, except to again point out that stealing under Section 560.156 RSMo 1969 is defined as "to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property" and points out the two methods by which the offense of stealing can be perpetrated, "either without * * * consent or by means of deceit."

The amended information upon which this defendant was retried properly charged an offense under the statute. The case was submitted to the jury in the state's verdict directing instruction upon the hypothesis that the defendant took funds of the Tittsworths with the intent to permanently deprive them of its use and to convert it to his own use "without the consent of the owners".

Both direct and circumstantial evidence was offered to establish the elements of the crime. The jury could have found that the defendant "exercised dominion" over the funds and used them in a manner inconsistent with the rights of the Tittsworths. There was direct and undisputed evidence by the records of Community which showed that the Richardson check was deposited to the defendant's account and, except for the check to the Tittsworths, checked out by him that same day for purposes other than in payment of the VA loan.

There was direct evidence in the form of testimony by the Tittsworths, likewise undisputed, that they never consented to the use of these funds except for that sole and limited purpose, and that the payment to VA was to be made "right away".

The element of the offense, that the defendant intended to permanently deprive the Tittsworths of their funds and to convert them to his own use, was established by circumstantial evidence from which the jury was authorized to draw an inference of such intent.

It thus appears that the elements of the offense charged were established by both direct and circumstantial evidence and under the above authorities the giving of a circumstantial evidence instruction was not mandatory and error cannot be predicated upon the trial court's refusal to do so. The defendant's second point is ruled against him.

The third and last point raised by the defendant (also divided into three subsections) is that the court erred in admitting the Community records into evidence. He asserts (A) that his bank records are within the zone of privacy accorded Fourth Amendment protection; (B) that he has standing to object to a search of his bank records; and (C) that his bank records were searched and the search was without probable cause.

■■■ The defendant filed a motion to suppress the bank records and a hearing was held on the motion preliminary to the retrial. While this is the proper way to proceed to raise the question of unlawful search (and seizure), *State v. Lord*, 286 S.W.2d 737, 740–741[8] (Mo.1956); *State v. Duisen*, 403 S.W.2d 574, 576[1] (Mo.1966), the motion does not prove itself and the burden is upon the defendant to establish the grounds asserted for suppression of the evidence. *State v. Stuart*, 415 S.W.2d 766, 767[3, 4] (Mo.1967); *State v. Duisen*, 403 S.W.2d 574, 576[2] (Mo.1966); *State v. Hepperman*, 349 Mo. 681, 162 S.W.2d 878, 887[16] (1942).

■■ The basis for the defendant's motion to suppress was that the prosecuting attorney had gone to Community and searched his bank records just prior to the date the defendant was charged. At the hearing on the motion to suppress, the defendant called the prosecutor as a witness. The prosecutor denied that he had ever viewed the defendant's bank records before they were subpoenaed, and produced in response thereto at the first trial. The defendant called several other witnesses, bank employees, who testified that the prosecutor was at the bank viewing some records. None of these, however, testified that he was view-

ing the defendant's records and there was some evidence that at the time the prosecutor was attempting to obtain release of county funds from Community which had then been placed in the charge of the Missouri Division of Finance. There was a complete failure of any proof that the prosecutor had ever searched the defendant's bank records. Without a search (and seizure) there can be no illegal or unconstitutional search (and seizure). The defendant's third point is ruled against him.

The judgment is affirmed.

All concur.